1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY, a Minnesota
corporation and ST. PAUL GUARDIAN
INSURANCE COMPANY, a Minnesota
corporation,

                    Plaintiffs,

v.

HEBERT CONSTRUCTION, INC., a
Washington corporation; MEADOW
VALLEY, LLC, a Washington limited
liability company; ROGER and SHELLY
HEBERT, individually and the marital
community thereof; HENRY and KAREN
HEBERT, individually and the marital
community thereof; ANDRZEJ and ROMA
LAWSKI, individually and the marital
community thereof; JAMES and ANNE
KOSSERT, individually and the marital
community thereof; and ADMIRAL
INSURANCE COMPANY, a Delaware
Company,

                    Defendants.
_____

ADMIRAL INSURANCE COMPANY, a
Delaware corporation,

                    Third-Party
Plaintiff,

No.  C05-388Z

ORDER

ORDER -  1

1    v.

2    SAFECO INSURANCE COMPANY, a
3    Washington corporation, AMERICAN
     ECONOMY INSURANCE COMPANY, a
4    Indiana corporation, and JOHN DOE
     INSURANCE COMPANIES 1-50,

5                          Third Party
6    Defendants.

7

8          This matter comes before the Court on Third-Party Defendants Safeco Insurance

9    Company's ("Safeco") and American Economy Insurance Company's ("AEIC") motion for

10   summary judgment, docket no. 57, Defendant/Third-Party Plaintiff Admiral Insurance

11   Company's ("Admiral") cross-motion for summary judgment, docket no. 65, and AEIC's

12   motion to strike, docket no. 70.  Having reviewed the briefs, declarations, and exhibits

13   thereto, the Court enters the following Order.

14   **B**ACKGROUND

15         This case involves insurance coverage claims related to a condominium defect suit

16   that has been adjudicated in King County Superior Court.  The motions at issue here involve

17   only the claims and counter-claims between the insuring parties AEIC/Safeco and Admiral.

18   AEIC moves for a summary judgment order stating that it is entitled to a claim-bar against

19   Admiral's claim for contribution.  Safeco moves separately for dismissal on the grounds that

20   it never issued an insurance policy related to this litigation.[1]  In response, Admiral cross-

21   moves for a summary judgment order stating that AEIC had a duty to defend and indemnify

22   two entities that were mutually insured by both AEIC and Admiral and, as a result, that

23   Admiral is entitled to equitable contribution.  Finally, AEIC brings a motion to strike

24   _____

25   [1] Acknowledging that there is no dispute that AEIC is the "real party in interest" in this
     litigation, Admiral states that it "does not oppose the dismissal of Safeco."  Third-Party Pl.'s
26   Opp., docket no. 61, at 2 n.1.  Accordingly, Safeco's motion for summary judgment
     dismissal is GRANTED.

     ORDER - 2

1    documents and statements for failure to provide authentication and citation.  Third-Party

2    Defs.' Opp., docket no. 70, at 2, 6-9.

3    The Underlying State Court Action

4         The claims, counter-claims, cross-claims, and affirmative defenses at issue in this case

5    arise out of, or are closely related to, an underlying state court action involving construction

6    defects.  Compl., docket no. 1, ¶¶ 14-21; Answer, docket no. 15, ¶¶ 3-4; Answer, docket no.

7    22, ¶¶ 14-21.  By way of the Complaint and respective Answers, the parties allege and admit

8    the following facts regarding the state court action.  On September 5, 2003, and November

9    24, 2004, the Meadow Valley Owners Association ("Association") filed complaints against

10   two defendants based on alleged construction defects in a 78-unit condominium project

11   known as Meadow Valley Condominium (the "Project").  The Association brought claims

12   against Meadow Valley LLC ("MVLLC"), the developer of the Project, and Roger Hebert,

13   the manager of MVLLC.  In turn, MVLLC brought third-party claims against Hebert

14   Construction, Incorporated ("HCI"), the general contractor for the Project, and HCI brought

15   fourth-party claims against several of HCI's subcontractors, one of which is Interior Motives,

16   Incorporated ("Interior").

17        On July 22, 2005, AEIC entered into a settlement agreement with the state court

18   action defendants it insured, including MVLLC, HCI, and Interior.  Knowles Decl., docket

19   no. 60, at Ex. C (Settlement Agreement).  The settlement released all claims for the sum of

20   $115,000.  Id.  AEIC's alleged liability in the state court action was based on possible

21   defense and indemnification obligations as an insurer for Interior, MVLLC and HCI from

22   2001 through 2004.  See Knowles Decl., at Ex. A (Insurance Policies).  On September 19,

23   2005, the Association entered into a stipulated judgment against MVLLC and HCI in the

24   amount of $6,400,000.00.  See Knowles Decl., at Ex. B (Stipulated Judgment).

25   //

26   //

Claims Asserted in this Action

This case was initiated when Plaintiffs St. Paul Fire and Marine Insurance Company and St. Paul Guardian Insurance Company (collectively, "St. Paul") filed a declaratory judgment action seeking a judgment that they have no duty to defend or indemnify any of the state court defendants and a determination of their rights relative to Admiral.  Compl., at pp. 8-9.  St. Paul's Complaint was followed by counter-claims on behalf of both the state court defendants and Admiral, all of which also cross-claimed against one another.  Answers, docket nos. 15, 22.  Admiral also brought a third-party claim for contribution against Safeco and AEIC, which responded with their own counter-claim for a contribution claim-bar order.  Docket nos. 51, 56.  Only the third-party claims between Admiral and Safeco/AEIC are at issue in these motions for summary judgment.

Factual Basis for these Motions

Both AEIC and Admiral rely on various clauses in the policies they issued to MVLLC and HCI.  AEIC issued a Business Owners Policy ("BOP") to MVLLC and HCI for the years 2001-2002, 2002-2003, and 2003-2004.  Knowles Decl., at Ex. A (pp. 750, 862, 955).  Under the "Coverages" heading, the AEIC policy states in relevant part as follows:

> **A.    COVERAGES**
>
>     **1.    Business Liability**
>
>         **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" . . . to which this insurance applies.  However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damages" . . . to which this insurance does not apply.

Id. at Ex. A (pp. 832, 909, 1011) (bold in original).  Critical to this dispute, each of the AEIC policies include what are known as "Other Insurance" clauses, which state as follows:

> **H.    OTHER INSURANCE**
>
>     **1.**    If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect

1        on it or not.  But we will not pay more than the applicable Limit of Insurance.

**2.**      Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.

**3.**      When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend.  If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

Id. at Ex. A (pp. 794, 925,1027) (bold in original).

In contrast, Admiral maintained a Commercial General Liability Coverage ("CGLC") policy in favor of MVLLC and HCI for the period from February 4, 2000, to February 4, 2001.  Duany Decl., docket no. 62, Ex. A (Admiral Policy No. A00AG08147).  Admiral's CGLC policy included a coverage provision that states in relevant part as follows:

We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply.

Id. at Ex. A (CG 00 57 09 99).  As in AEIC's BOP policy, Admiral's CGLC policy included an "Other Insurance" clause, which states in relevant part as follows:

**4.**      **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a.**      **Primary Insurance**

This insurance is primary except when **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **c.** below.

**b.**      **Excess Insurance**

This insurance is excess over:

**(1)**      Any of the other insurance, whether primary, excess or contingent or on any other basis:

ORDER - 5

1

        **(a)**     That is fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work."

2

     . . .

3

    **(2)**    Any other primary Insurance available to you covering liability for damages arising out of the premises or

4

         operations for which you have been added as an additional insured by attachment of an endorsement.

5

6

         When this insurance is excess, we will have no duty under Coverages A or B to defend in the insured against an "suit" if any other insurer has a duty to defend the insured against

7

         that "suit."  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against

8

         all those other insurers.

9

Id. at Ex. A (CG 00 01 07 98) (bold in original).

10

AEIC's Motion to Strike

11

     In the opposition to Admiral's cross-motion for summary judgment, AEIC brings a

12

motion to strike the following: (1) the copy of Admiral's insurance policy with

13

MVLLC/HCI, (2) letters attached to the Duany declaration, and (3) all unsupported factual

14

assertions in Admiral's motion.  See Third-Party Defs.' Opp., at 6-9; Duany Decl., Exs. 1-3.

15

AEIC is correct that the exhibits to the Duany declaration are not properly authenticated, as

16

they are supported only by Admiral's attorney's assertion that they are "true and correct

17

copies."  See Orr v. Bank of America, 285 F.3d 764 (9th Cir. 2002) (reference to "true and

18

correct copies" insufficient for authentication on summary judgment).  However, in its Reply

19

brief, Admiral includes the declarations of Thomas Foster, a Claim Superintendent for

20

Admiral, and Douglas Weigel, an attorney for MVLLC in the state court action.  These

21

declarations authenticate both the copy of Admiral's insurance policy and the letters attached

22

to the Duany declaration.  Accordingly, the Court DENIES AS MOOT this portion of

23

Admiral's motion to strike.

24

     AEIC is also correct that Admiral included many factual statements in the "Statement

25

of Facts" portion of its brief that are unsupported by citation to the record.  In fact, nearly all

26

of the "facts" stated by Admiral are without citation.  For example, Admiral states that the

1   Association and state court defendants had entered into a $7.2 million settlement (later

2   reduced to $6.4 million) before AEIC settled with the state court defendants.  Admiral also

3   states that it, along with the St. Paul insurance companies, paid approximately $800,000 to

4   defend the state court defendants while AEIC paid nothing.  Federal Rule of Civil Procedure

5   56(e) provides that "when a motion for summary judgment is made and supported as

6   provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of

7   the adverse party's pleading, but the adverse party's response, *by affidavits or as otherwise*

8   *provided* in this rule, must set forth *specific facts showing that there is a genuine issue for*

9   *trial*."  (Emphasis added).  While AEIC does not argue that the unsupported facts stated by

10   Admiral are necessarily inaccurate, the factual assertions clearly do not conform with the

11   standards of Rule 56.  Therefore, the Court GRANTS IN PART this portion of AEIC's

12   motion to strike because Admiral has failed to provide citations.  For purposes of this

13   motion, the Court will not consider the statements of fact in Admiral's brief (which are too

14   numerous to list individually in this Order) that are unsupported by the declarations and

15   exhibits in the record.

16   ## DISCUSSION

17        Summary judgment is appropriate when the movant demonstrates that there is no

18   genuine issue as to any material fact and that the moving party is entitled to judgment as a

19   matter of law.  FED. R. CIV. P. 56(c); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th

20   Cir. 2000).  The party moving for summary judgment "bears the initial responsibility of

21   informing the district court of the basis for its motion, and identifying those portions of 'the

22   pleadings, depositions, answers to interrogatories, and admissions on file, together with the

23   affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

24   fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

25   Once the moving party meets its initial responsibility, the burden shifts to the non-moving

26   party to establish that a genuine issue as to any material fact exists.  Matsushita Elec. Indus.

1   Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party must

2   present significant probative evidence tending to support its claim or defense.  Intel Corp. v.

3   Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  Evidence submitted

4   by a party opposing summary judgment is presumed valid, and all reasonable inferences that

5   may be drawn from that evidence must be drawn in favor of the non-moving party.

6   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

7          Under the law of Washington State, the interpretation of an insurance policy is a

8   question of law.  Grange Ins. Co. v. Brosseau, 113 Wn.2d 91, 95 (1989).  An insurance policy

9   "is construed as a whole, and 'should be given a fair, reasonable, and sensible construction

10  as would be given to the contract by the average person purchasing insurance.'"  Id. (citation

11  omitted).

12         AEIC raises two central arguments in support of its summary judgment motion.  First,

13  AEIC contends that Admiral cannot recover on its contribution claim because the "Other

14  Insurance" clause in AEIC's policy establishes, as a matter of law, that AEIC had no duty to

15  defend or indemnify MVLLC/HCI.  Second, AEIC argues that its July 2005 settlement of

16  $115,000.00 with MVLLC/HCI bars Admiral's contribution claim.  In its cross-motion,

17  Admiral maintains that its "Other Insurance" clause establishes that it had no duty to defend

18  or indemnify MVLLC/HCI but, instead, only AEIC had such obligations.  In the alternative,

19  Admiral argues that the two "Other Insurance" clauses are "mutually repugnant" under the

20  law, meaning AEIC and Admiral must share the defense and indemnification costs (i.e., that

21  Admiral is entitled to contribution from AEIC).  In response to AEIC's "settlement bar"

22  argument, Admiral contends that such settlements do not bar contribution claims and, even if

23  they did, the settlements are subject to a "reasonableness" test that AEIC's settlement

24  agreement with MVLLC/HCI cannot pass.

25  //

26  //

ORDER - 8

1    **I.      Scope of Policy Coverage**

2          The first issue is whether the "Other Insurance" clauses of the two policies—AEIC's

3    BOP policy and Admiral's CGLC policy—entitles either party to claim that their coverage

4    was "excess."  Both AEIC and Admiral argue that their policies are excess and the other

5    party's policy is primary, and Admiral raises the alternative argument that the "Other

6    Insurance" clauses are mutually repugnant, cancelling one another out.  AEIC argues that its

7    BOP policy is excess for the following three reasons: (1) the AEIC BOP policy is narrower

8    and does not contain the same scope of coverage as Admiral's CGLC policy, meaning the

9    CGLC policy was meant to be primary; (2) a section of Admiral's "Other Insurance" clause

10   states that Admiral's policy is excess if there exists other "p*rimary* insurance," while AEIC

11   asserts that its BOP policy is not primary; and (3) the fact that AEIC and its insureds only

12   intended the BOP policy to be "excess" is demonstrated by extrinsic evidence—namely,

13   correspondence between an AEIC underwriter and Interior regarding the possibility of

14   expanding coverage.  In response, Admiral argues that its CGLC policy is excess because

15   AEIC's BOP policy is primary, rendering Admiral's policy excess.

16         **A.      Scope of Coverage Comparison between the BOP and CGLC**

17         AEIC first contends that Admiral's policy is primary because a CGLC policy, which

18   AEIC describes as "a term of art" in the insurance industry, is broader and intended to

19   provide greater coverage than a BOP policy.  Third-Party Defs.' Opp., docket no. 70, at 12-

20   14.  AEIC states that a CGLC policy "provides basic or mainstream protection to businesses

21   for claims resulting from their ordinary business activities."  Id. at 13 (citing Stempel on

22   Insurance Contracts, § 14.01 at 14-8, 9, 12 (3d Ed. 2006)).  AEIC contrasts the CGLC policy

23   with its own BOP policy, which provides "some overlapping coverage" but "is clearly a

24   different policy, and includes coverages different from the CGL policy."  Id. at 13.  In

25   addition, AEIC notes the significant disparity between the premiums for the two policies: the

26   cost of Admiral's CGLC policy was $18,000.00, while AEIC's BOP policy covering

1   approximately the same period cost only $822.00.  Finally, AEIC relies on the declaration of

2   Patty Schuermeyer, a former Safeco underwriter who was assigned to the Interior Motives

3   account, who states that the "[r]isks insured under the BOP differ greatly from the risks

4   insured under a CGL because the CGL insured are generally engaged in higher risk

5   activities."  Docket no. 59, ¶¶ 2, 4, 7.  Thus, AEIC reasons, the nature of the policies and

6   their respective costs indicate that Admiral's CGLC policy was intended to provide primary

7   coverage, while AEIC's narrower BOP policy was intended only to be excess.

8        In response, Admiral argues that AEIC's BOP policy coverage is the same for the

9   liability at issue in this case.  Admiral notes that the courts have described "primary

10  insurance" simply as coverage that applies after the occurrence of an event covered under the

11  terms of the policy.  See Diaz v. Nat'l Car Rental Sys. Inc., 143 Wn.2d 57, 62 (2001)

12  ("'Primary insurance' is defined as '[i]nsurance that attached immediately on the happening

13  of a loss.'"); Safeco Ins. Co. of Illinois v. Automobile Club Ins. Co.,108 Wn. App. 468, 479

14  (2001) ("Primary policies are exactly that, the first line of defense in the event of accident or

15  injury"); Highlands Ins. Co. v. Continental Casualty Co., 64 F.3d 514, 520 (9th Cir. 1995)

16  (primary insurance is coverage that attaches immediately upon the happening of an

17  occurrence that is covered under policy) (citing California state law).  Admiral also argues

18  that the relevant coverage clauses in both policies are nearly identical.  Admiral is correct.

19  As shown in the table below, the "coverage" language in both policies is virtually identical:

20

| AEIC's BOP Policy | Admiral's CGLC Policy |
|---|---|
| We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" . . . to which this insurance applies. Knowles Decl., at Ex. A (pp. 832, 909, 1011). | We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  Duany Decl., at Ex. A (Admiral Policy No. A00AG08147 at CG 00 57 09 99) |

1    AEIC does not provide an explanation of how, in light of the cited language, its BOP

2    policy is strictly excess.  Indeed, AEIC acknowledges that "there is some overlapping

3    coverage."  Third-Party Defs.' Opp., at 13.  And although AEIC is correct that its BOP

4    policy provides *some* different coverage, the relevant question is whether the BOP policy

5    included coverage that triggered AEIC's duty to defend and indemnify such that Admiral

6    might bring a claim for contribution.  AEIC fails to provide any authority for the proposition

7    that disparate insurance premiums necessarily render the more costly policy primary and the

8    less costly policy excess.  Finally, while the Schuermeyer declaration states generally that

9    the scope of coverage and premiums differ between BOP and CGLC policies, Schuermeyer

10   stops short of stating that AEIC's BOP coverage does not overlap with Admiral's CGLC

11   policy.  AEIC's argument that the types of policies (BOP versus CGLC) establish, as a

12   matter of law, that its coverage was not "primary" is without merit.

**B.     The CGLC Policy's use of a "Primary Insurance" Limitation**

13

14   Next, AEIC argues that Admiral's "Other Insurance" clause has no effect because that

15   clause renders Admiral's policy excess only if the other insurance available to MVLLC/HCI

16   was "primary."  Id. at 11-12.  The clause at issue states as follows:

17       This insurance is excess over:

18       (1)    Any of the other insurance, whether primary, excess or contingent or on
                any other basis:

19
20              (a)    That is fire, Extended Coverage, Builder's Risk, Installation Risk
                       or similar coverage for "your work."
                       . . .
21       (2)    Any other ***primary Insurance*** available to you covering liability for
                damages arising out of the premises or operations for which you have been
22              added as an additional insured by attachment of an endorsement.

23   Duany Decl., at Ex. A (CG 00 01 07 98) (emphasis added).

24   In contrast, AEIC's "Other Insurance" clause does not include a "primary" qualifier.

25   AEIC's policy is rendered excess "[i]f there is other insurance covering the same loss or

26   damage . . . whether [MVLLC/HCI] can collect on it or not."  Id. at Ex. A (pp. 794,

1   925,1027).  Therefore, AEIC reasons, Admiral's "Other Insurance" clause is *inoperative*

2   because Admiral cannot establish that AEIC's BOP policy was "primary," while AEIC's

3   "Other Insurance" clause is *operative* because it contains no "primary" qualifier.

4        In response, Admiral argues that the plain language of the AEIC BOP policy obligates

5   AEIC to defend and indemnify upon the occurrence of a "property damage" event.  See

6   Coverage Comparison Table (above).  Admiral maintains that any policy that triggers such

7   obligations immediately is "primary."  See Diaz , 143 Wn.2d at 62 ("'Primary insurance' is

8   defined as '[i]nsurance that attached immediately on the happening of a loss.'").  As

9   described above, Admiral's analysis of the language in both policies is correct.  AEIC does

10  not offer any alternative definition of "primary" insurance coverage, and the "property

11  damage" coverage clause of AEIC's policy is virtually identical to Admiral's policy.  AEIC's

12  contention that its BOP policies were not "primary" is without merit.

13       **C.      AEIC's Reliance on Extrinsic Evidence to Define Its Policy**

14       AEIC's third and final argument relies on extrinsic evidence regarding the type of

15  coverage provided by its BOP policy.  AEIC relies on an email exchange on March 27, 2001,

16  between its underwriter and an insurance agent for Interior (who added MVLLC/HCI to the

17  policy four months later).  In the email, AEIC's underwriter wrote:

18       Unfortunately, there is no way for us to add the primary additional insured and
         non-contributory wording onto our businessowner's policies.  On the BOP,
19       you need to look at how BP0009 (BOP Common Policy Conditions) reads
         under section H.  "Other Insurance."  Unlike the CGL "Other Insurance
20       Clause," the BOP does not contain a primary provision.  Basically, the BOP
         says that if other insurance exists for the same loss or damage, then the BOP is
21       excess.  So, if an additional insured (A/I) is added to the BOP by, say
         endorsement BP7032 (addl insd owners, lessees, contractors), then the BOP
22       would be excess if the A/I's policy was primary.  ***If the A/I's insurance has
         an excess provision where both our insured and the A/I's policy are excess
23       (ie: both state they are excess for the loss), then each would likely pay on an
         "equal shares" bases due to the guiding principles.***  Note that defense is a big
24       issue with additional insureds and the BOP is very clear that it "will provide no
         defense that any other insured has a duty to defend."
25       . . .

26       ***On the BOP, the A/I is – at best – sharing indemnity liability between A/I
         status on our policy and their own CGL.  At worst, they have their A/I status***

ORDER -  12

*on our BOP to apply as excess insurance.*  Defense costs will not apply to the A/I on the BOP unless there is no other insurer with that duty.  Bottom line, the BOP doesn't provide primary coverage for the additional insured who has their own, separate liability insurance policy.

Schuermeyer Decl., docket no. 59, Ex. A (AS 1194-96) (emphasis added).[2]

AEIC contends that this email aids in establishing that the parties to the insurance contract intended the BOP policy to be excess only, and not to include primary coverage. See Berg v. Hudesman, 115 Wn.2d 657, 63-64 (1990) (ambiguity in the meaning of contract language need not exist before evidence of the circumstances surrounding the making of the contract may be admissible, but unilateral or subjective purposes and intentions about the meaning of what is written is not evidence of the parties' intentions); Lynott v. Nat'l Union Fire Ins. Co., 123 Wn.2d 678, 684-85 (1990) (applying the Berg rule in the context of interpreting an insurance contract).  In its briefing, AEIC repeatedly asserts that it is clear from the BOP policy and extrinsic evidence that AEIC "has no duty to defend any insured under the policy if another insurance company is defending the lawsuit."  See e.g., Third-Party Defs.' Opp., at 10.

AEIC's arguments are without merit for several reasons.  First, AEIC's suggestion that it does not have a duty to defend if another company is "defending" is contradicted by the language of its policy, which actually states "[w]hen this insurance is excess, we will have no duty . . . to defend any claim or 'suit' that any other insurer *has a duty to defend*."  Knowles Decl., at Ex. A (pp. 794, 925, 1027) (emphasis added).[3]  Having a duty to defend and actually defending are two different things where, as here, the defending insurance company (Admiral) did so under a reservation of rights.  Admiral continues to maintain that it had no duty to defend.  Second, the Berg context rule does not allow the Court to consider

---

[2] Notably, in relying on the Schuermeyer email in their brief, AEIC omitted the emphasized language.  See Third-Party Defs.' Mot., at 5-6.

[3] The "Other Insurance" policy language is identical for 2001-2002, 2002-2003, and 2003-2004.

extrinsic evidence where such evidence contradicts or modifies the language of the contract, and it does not allow the Court to consider the unilateral intentions of one party. AEIC fails to point to any specific term or clause of its BOP policy, the interpretation of which is aided by the extrinsic evidence. Finally, the unabridged version of the Schuermeyer email clearly contemplates the possibility that, where the "additional insured" (MVLLC/HCI) has a CGL with an "excess" provision, AEIC may have to share in the costs. Thus, to the extent AEIC might rely on this extrinsic evidence, the evidence does not support its contention that the BOP policy was clearly and unequivocally excess.

In sum, AEIC has not established that the policy language or extrinsic evidence renders its BOP policy purely excess. AEIC cannot, therefore, show that it had no duty to defend or indemnify as a matter of law, and AEIC is not entitled to summary judgment on this basis.

**D.      Admiral's Cross-Motion for Judgment that its Policy is Excess**

Admiral cross-moves for summary judgment, arguing that the Other Insurance clause of its CGLC policy renders the policy purely excess. Admiral relies on an "endorsement" to its CGLC policy that states as follows:

> It is agreed that any independent contractors utilized by you shall have in force insurance of the type described in the schedule below and with limits of liability for such insurance equal to or greater than those shown in the schedule.

> It is further agreed that, subject to the above, such insurance as is provided by this policy shall be excess over and not contributing with the insurance described in the schedule. The terms and conditions of the policy relating to "Other insurance" are amended accordingly.

Coverage

Commercial General Liability

Duany Decl., Ex. 1 (AD 66 03 01 95).

Admiral argues that this endorsement establishes that its CGLC policy was excess over AEIC's BOP policy. Admiral's logic appears to be as follows: (1) the endorsement contractually obligated MVLLC/HCI to obtain insurance "of the type described in the

ORDER - 14

schedule below" (i.e., Commercial General Liability) for subcontractors; (2) Interior was a subcontractor of MVLLC/HCI, so Interior must have obtained such insurance from AEIC in the form of the BOP policy because that was an obligation of MVLLC/HCI; and (3) Admiral's policy is therefore excess over the BOP policy because the endorsement states that "such insurance provided by this policy shall be excess over and not contributing with the insurance described in the schedule."

There are multiple flaws in this argument.  First, the fact that MVLLC/HCI undertook the contractual obligation to have their subcontracts obtain CGL insurance does not establish, and has no bearing on, the nature and scope of coverage *actually* supplied in such subcontractors' policies.  In other words, the MVLLC/HCI promise to have subcontractors obtain primary CGL coverage does not mean Interior did so in this case; the terms of AEIC's BOP policy speak for themselves.  Second, under the plain language of Admiral's endorsement, AEIC's BOP policy does not fall directly within the category of "insurance of the type described in the schedule."  Although there is some overlapping coverage, the AEIC BOP policy is not the same as the "Commercial General Liability" policy listed in the schedule.  As a result, Admiral's endorsement does not speak directly to whether its policy is rendered excess due to the existence of the BOP policy.

Admiral's contention that its policy is excess while AEIC's is primary is not supported by the policy language.  Admiral's CGLC and AEIC's BOP contain virtually identical coverage clauses and similar "Other Insurance" clauses.  Accordingly, Admiral's cross-motion for summary judgment is DENIED.

## E.    Admiral's Alternative Contention that the "Other Insurance" Clauses are Mutually Repugnant

In its response and cross-motion, Admiral raises the alternative argument that the two "Other Insurance" clauses cancel one another out, requiring AEIC and Admiral to share defense and indemnity costs.  Docket nos. 61, 65, at 14-15.  Admiral relies on <u>Pacific Indemnity Company v. Federated American Insurance Company</u>, in which the Washington

1    State Supreme Court addressed competing "excess insurance" clauses.  76 Wn.2d 449

2    (1969), overruled on other grounds, <u>Mission Ins. Co. v. Allendale Mut. Ins. Co.</u>, 95 Wn.2d

3    464 (1981).  In <u>Pacific Indemnity</u>, one person borrowed another's car with permission and

4    had an accident.  <u>Id.</u> at 249.  The driver's insurance provided that her coverage was excess if

5    she was driving the automobile of another, while the owner's insurance provided that his

6    coverage was excess if another person was driving his automobile.  <u>Id.</u> at 249-50.  After the

7    insurance companies disputed which would provide coverage, the <u>Pacific Indemnity</u> Court

8    identified three possible solutions: (1) enforce both clauses, rendering each policy "excess"

9    and providing no coverage; (2) designate the owner's insurance policy "primary" because it

10   was his automobile and, thereby, disregard this policy's "excess" clause; or (3) deem the two

11   clauses "mutually repugnant" and make both insurers liable for a *pro rata* share of the

12   coverage.  <u>Id.</u> at 250-251.  The Court disregarded the first option because it would produce

13   an "unintended absurdity," and it disregarded the second option because there was no basis

14   to differentiate between the policies in identifying one or the other as "primary."  <u>Id.</u>  Thus,

15   the Court applied the third option, holding that this option comported with the "general rule

16   and weight of authority."  <u>Id.</u> at 251 (citing 7 Am. Jur. 2d Automobile Insurance § 220, p.

17   545 (where two or more policies provide coverage for the particular event and all polices

18   contain "excess insurance" clauses, it is generally held that such clauses are "mutually

19   repugnant" and must be disregarded, rendering each company liable for a pro rata share of

20   the judgment or settlement)).

21          AEIC offers no response to <u>Pacific Indemnity</u> and no direct opposition to Admiral's

22   argument that, if the "Other Insurance" clauses conflict, the clauses effectively cancel each

23   other out.  Accordingly, the Court concludes that the inability of both AEIC and Admiral to

24   demonstrate that their respective policies are not "primary" results in a presumption that they

25   must share the defense and indemnity costs.  Because this presumption applies, the Court

26   must next address the issue of whether AEIC is entitled to summary judgment on the basis

1    that its $115,000.00 settlement with MVLLC/HCI precludes a contribution claim by

2    Admiral.

3    **II.      Settlement as a Bar to Contribution Claims**

4              AEIC's second central argument in support of its motion for summary judgment is

5    that the law of equity precludes a contribution claim by Admiral where AEIC has previously

6    entered a good-faith, reasonable settlement with MVLLC/HCI.  AEIC maintains that its July

7    2005 settlement of $115,000.00 constitutes such a settlement and presently entitles it to a

8    claim-bar order against Admiral.  In opposition, Admiral first argues that claim-bar orders in

9    contribution cases are not available under relevant case law.  Admiral also contends that,

10   even if principles of equity allow the use of such claim-bar orders, the value AEIC's

11   settlement was too insignificant to be "reasonable" under the circumstances of this case.

12             **A.      Authority to Enter a Claim-Bar Order**

13             The first inquiry is whether this Court has the legal authority to bar Admiral's claim

14   for equitable contribution on the basis of AEIC's settlement with MVLLC/HCI.  AEIC relies

15   primarily on two unpublished cases from the Western District of Washington.  See Zidell

16   Marine Corp. v. Beneficial Fire and Casualty Ins. Co., Case No. 03-5131, docket no. 254

17   (W.D. Wash. May 24, 2004); Cadet Mfg. Co. v. Am. Ins. Co., Case No. 04-5411, docket no.

18   245 (W.D. Wash. March 30, 2006).  In Zidell, the plaintiff and two insurance companies

19   reached a settlement agreement that was contingent on Judge Leighton entering a claims bar

20   order precluding non-settling insurers from seeking contribution or indemnity from settling

21   insurers.  Zidell Order, at 1-2.  Judge Leighton stated: "as a general proposition, a court has

22   the inherent equitable power to enter an order precluding subsequent claims for contribution

23   (and indemnity) by non-settling parties in the litigation with notice of the proposed order, so

24   long as their rights are protected by it."  Id. at 2 (citing FED. R. CIV. P. 16(a), (c) and Franklin

25   v. Kaypro Corp., 884 F.2d 1222, 1225-29 (9th Cir. 1189).  Judge Leighton went on to

26   address questions of whether the settlement was reasonable and whether the rights of the

non-settling

ORDER - 17

1   defendants would be adequately protected.  The Order noted that, after review, none of the

2   non-settling defendants claimed or demonstrated that the settlement was unreasonable or that

3   it was negotiated in anything less than good faith.  Id. at 4.  Judge Leighton also looked to the

4   total policy limits and the total period of insurance as "reasonableness" factors, concluding

5   that a comparison between the limits and settlement amount demonstrated that the settlement

6   was reasonable.  Id. at 5.

7        In Cadet, Judge Burgess addressed nearly identical issues in a motion for a claim-bar

8   order regarding a settlement that had been subject to review by a bankruptcy court.  Cadet

9   Order, at 1-2.  Citing Zidell, Judge Burgess concluded that the court had the "inherent

10  equitable power to enter an order precluding subsequent claims for contribution and

11  indemnity by non-settling parties."  Id. at 2.  The injured party's maximum claim in Cadet

12  was estimated at $36 million, but it reached an agreement to settle for approximately $24

13  million, $10 million of which (42%) would be covered by the settling insurers.  Thus, Judge

14  Burgess noted that the non-settling insurers were potentially liable for the $14 million (58%)

15  remainder on the judgment, but those insurers retained their coverage defenses.  Id. at 4.

16  Judge Burgess also took note that, even if liable for coverage, the non-settling insurers were

17  free to later contest their *percentage* of liability.  In other words, even if they could not seek

18  contribution from the settling insurers, the non-settling insurers could still argue that their

19  coverage responsibility was less than the $14 million on the settlement, requiring the injured

20  party to absorb the shortfall.  Id. at 4-5.  AEIC contends that, as in Zidell and Cadet, this

21  Court has the inherent equitable authority to enter a claim-bar order in AEIC's favor.

22        In opposition, Admiral contends that AEIC's counter-claim for a bar order is

23  precluded under Fireman's Fund Insurance Company v. Maryland Casualty Company, 65

24  Cal. App. 4th 1279 (1998).  In Fireman's Fund, a construction company was sued for

25  condominium defects and was potentially covered for the liability by two insurers—

26  Fireman's Fund and Maryland Casualty.  Id. at 1287-88.  Fireman's provided a defense

under

1    a reservation of rights, while Maryland declined to provide any defense or coverage.  Id.  The

2    construction company then brought suit against Maryland for refusing to defend, which was

3    eventually settled with a release of all claims by the construction company.  Id. at 1288.

4    Fireman's then brought reimbursement/contribution/indemnity claims against Maryland for

5    defense costs.  On a motion for summary judgment, Maryland argued that Fireman's claim

6    was essentially one of equitable subrogation (i.e., Fireman's was attempting to take the

7    construction company's place in litigating the defense and indemnity coverage issues).  Id.

8    Fireman's argued that its contribution claim was distinct from equitable subrogation.  Id.

9    The trial court agreed with Fireman's, and Maryland appealed the ruling.

10        The "principal issue" identified by the California Court of Appeals was as follows:

11   "whether one insurer's claim against another for contribution of defending and settling a

12   claim against the insured is based on the theory of equitable subrogation, and is therefore

13   dependent on and limited by underlying rights of the insured, to which both insurers may be

14   subrogated; or whether instead an insurer possesses a direct cause of action for equitable

15   contribution entirely independent of the rights of the insured."  Id. at 1288-89.  In its

16   briefing, Maryland conceded that "if subrogation applies, the judgment should be reversed . .

17   . if not, then the judgment should be affirmed."  Id. at 1289 n.1.  Thus, the parties did not

18   attempt to litigate, and the Fireman's Fund Court assumed in the opinion, that there was no

19   possibility of a claim-bar order even if the Court determined that Fireman's claim was truly

20   based on contribution.  After a lengthy analysis not relevant to this case, the Fireman's Fund

21   Court ultimately held as follows:

22        We conclude that where two or more insurers independently provide primary
          insurance on the same risk for which they are both liable for any loss to the same
23        insured, the insurance carrier who pays the loss or defends a lawsuit against the
          insured is entitled to equitable contribution from the other insurer or insurers,
24        without regard to principles of equitable subrogation.  As a corollary to this
          principle, we hold that one insurer's settlement with the insured is not a bar to a
25        separate action against that insurer by the other insurer or insurers for equitable
          contribution or indemnity.

26
     Id. at 301.

     ORDER -  19

1    Admiral relies exclusively on Fireman's Fund, arguing that it is directly on point in

2 holding that "one insurer's settlement with the insured is not a bar to a separate action

3 against that insurer by the other insurer or insurers for equitable contribution."  Id.  Admiral

4 also contends that AEIC's reliance on Zidell and Cadet is misplaced because those cases "fail

5 to address the factual scenario at issue in this case—whether an action for equitable

6 contribution exists against a settling insurer where that settling insurer wrongfully abandoned

7 its insured leaving other carriers to foot the bill."  Third-Party Pl.'s Opp., at 8 n.1.

8    Admiral's reliance on Fireman's Fund and attempt to distinguish Zidell/Cadet is not

9 persuasive.  The Fireman's Fund opinion focused on the distinction between equitable

10 subrogation and contribution.  Fireman's Fund did not address the related but separate issue

11 of whether a potentially viable equitable contribution claim may alternatively be dismissed

12 using a court's inherent equity power to enter a claim-bar order, which was precisely the

13 issue in Zidell and Cadet.  Nothing in Zidell or Cadet directly contradicts the holding in

14 Fireman's Fund.  In both cases, the courts were operating under the assumption that the non-

15 settling insurers could bring a contribution claim, but the courts simply took a further step in

16 determining whether a reasonable, good faith settlement that protected the non-settlers rights

17 entitled the settlers to a claim-bar order.  Accordingly, this Court now follows Zidell and

18 Cadet in concluding that it has the inherent equitable power to enter a claim-bar order if

19 AEIC can establish that its settlement was reasonable and reached in good faith.

20    **B.    Reasonableness of AEIC's Settlement with MVLLC/HCI**

21    AEIC argues that its $115,000.00 settlement was reasonable because it had viable

22 coverage defenses and its liability exposure was limited to Interior's work on the

23 Project—namely, the tile work in the condominiums.[4]  See Third-Party Defs.' Opp., at 18-

24

25 _____

26 [4] Admiral does not respond to AEIC's contention that the $115,000.00 settlement is
   reasonable in light of the fact that AEIC was allegedly only insuring Interior's tile
   work on the Project.

ORDER - 20

19.  AEIC also notes that Admiral has never alleged that AEIC negotiated the $115,000 settlement with MVLLC/HCI in bad faith.  Finally, AEIC relies on the protections afforded to non-settling insurers that were identified by Judge Burgess, including Admiral's coverage defenses and potential reduction of its percentage of liability relative to AEIC.  In response, Admiral argues that the $115,000.00 settlement was not reasonable under the circumstances because (1) at the time of the AEIC settlement, MVLLC/HCI had reached a $7.2 million with the Association; (2) the AEIC policies had coverage limits of $1 million dollars, while the Admiral and St. Paul policies had limits of $1 million and $5 million, respectively; and (3) AEIC did not contribute to the cost of defending MVLLC/HCI.

The "reasonableness" standard is vague and creates a close question in this case.  On one hand, AEIC's argument that the settlement is reasonable in light of its (alleged) limitation on liability to Interior's tile work is un-rebutted, and Admiral may still argue that its percentage of liability for defense and indemnification costs is minimal or non-existent. On the other hand, Admiral is correct that, on its face, the settlement between AEIC and MVLLC/HCI appears disproportionately small given the AEIC policy limit of $1 million, the potential obligation to pay defense costs, and the total settlement of $6.4 million. Unfortunately, the record before the Court and the briefing is not well developed as to the reasonableness issue.[5]  For example, AEIC does not point clearly to the portions of its policies that limit its liability to Interior's tile work alone, and it offers no evidentiary basis to support its argument that $115,000.00 is in the ballpark of its potential liability for the underlying state-court settlement.  Similarly, Admiral offers no argument concerning the

---

[5] The Cadet Court had the benefit of a fully-litigated reasonableness issue arising out of the bankruptcy proceedings and, in Zidell, none of the non-settling defendants objected to the reasonableness of the settlement.  The circumstances are not similar here because the reasonableness of the $115,000.00 settlement has had only cursory briefing.

ORDER -  21

1   potential scope of AEIC's liability under AEIC's policies.  Accordingly, the Court DENIES

2   AEIC's motion for summary judgment WITHOUT PREJUDICE.

3   ## CONCLUSION

4       Safeco's unopposed motion for summary judgment dismissal, docket no. 57, is

5   GRANTED.

6       AEIC's motion for a summary judgment determination that it had no duty to defend or

7   indemnify MVLLC/HCI under its BOP policies due to their "Other Insurance" clauses,

8   docket no. 57, is DENIED.

9       Admiral's motion for a summary judgment determination that it had no duty to defend

10  or indemnify MVLLC/HCI under its CGLC policy due to its "Other Insurance" clause,

11  docket no. 65, is DENIED.

12      AEIC's motion for summary judgment on its counter-claim for a claim-bar order,

13  docket no. 57, is DENIED WITHOUT PREJUDICE.  The Court concludes that, under Cadet

14  and Zidell, it has the inherent equity power to enter a claim-bar order but declines to reach

15  the question of whether AEIC's $115,000.00 settlement was reasonable based on the record

16  and briefing currently before the Court.

17      AEIC's motion to strike, docket no. 70, is DENIED IN PART AS MOOT as to the

18  exhibits to the Duany declaration and GRANTED IN PART as to each of the factual

19  assertions cited in Admiral's brief that are unsupported by citation to the record as required

20  under FED. R. CIV. P. 56.  The Court did not consider unsupported facts in ruling on these

21  motions.

22      IT IS SO ORDERED.

23      DATED this 19th day of July, 2006.

24

25

26

Thomas S. Zilly
United States District Judge

ORDER - 22