The Honorable Thomas S. Zilly

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8   ST. PAUL FIRE AND MARINE
    INSURANCE COMPANY, a Minnesota
9   corporation, and ST. PAUL GUARDIAN
    INSURANCE COMPANY, a Minnesota
10  corporation,

                        Plaintiffs,
11
              v.
12  HEBERT CONSTRUCTION, INC., a
    corporation; MEADOW VALLEY, LLC, a
13  Washington limited liability company;
    ROGER and SHELLY HEBERT,
    individually and the marital community
14  thereof; HENRY and KAREN HEBERT,
    individually and the marital community
15  thereof; ANDRZEJ and ROMA LAWSKI,
    individually and marital community thereof;
16  JAMES and ANNE KOSSERT, individually
    and the marital community thereof; and
17  ADMIRAL INSURANCE COMPANY, a
    Delaware corporation
18
                        Defendants.

NO.  C05-0388TJZ

**MEADOW VALLEY
DEFENDANTS' TRIAL BRIEF**

19
20        The  Meadow  Valley  Defendants  respectfully  submit  this  trial  brief  to  the  court

addressing the issues to be determined at the time of trial.

21
22
23

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 1

C05-0388TJZ

10383-026964   109181

**STAFFORD FREY COOPER**
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

# I. AUTHORITY

## A. AGENCY[1]

### 1. Marsh was St. Paul's agent for the insurance transactions in this case.

The Washington Insurance Code contains several provisions defining agents, brokers, and their respective relationships with insurance companies and insureds. RCW 48.17.010 defines "agent" as "any person **appointed by an insurer** to solicit applications for insurance on its behalf." (Emphasis added). RCW 48.17.020 defines "broker" as:

> . . . any person who, on behalf of the insured, for compensation as an independent contractor, for commission, or fee, **and not being an agent of the insurer**, solicits, negotiates, or procures insurance or reinsurance or the renewal or continuance thereof, or in any manner aids therein, for insureds or prospective insureds other than himself.

(Emphasis added). Both agents and brokers must be licensed in order to transact business. RCW 48.17.060. "Each insurer on appointing an agent in [Washington] shall file written notice thereof with the commissioner on forms as prescribed and furnished by the commissioner. . . ." RCW 48.17.160(1).

Generally, an insurance agent represents the insurer, while an insurance broker represents an insured. AAS-DMP Mgmt., L.P. Liquidating Trust v. Acordia N.W., Inc., 115 Wn. App. 833, 838, 63 P.3d 860 (2003) (*citing* RCW 48.17.010, defining "agent," and RCW 48.17.020, defining "broker"). "A broker, **as such**, is not an agent or other representative of an insurer, and does not have power, by his own acts, to bind the

---

[1] This section repeats in slightly greater detail the same agency analysis set forth in the Meadow Valley Defendants' motion filed 9/14/06 *(Docket #155)* for reconsideration / clarification of the court's 9/7/06 order granting summary judgment *(Docket No. 141)*. Even if the court does not grant reconsideration, and/or does not remove this issue from the jury's consideration at the close of evidence, the discussion herein informs how the jury should be instructed on this issue.

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 2

C05-0388TJZ

10383-026964   109181

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

insurer upon any risk or with reference to any insurance contract." RCW 48.17.260(1). However, in this case, Marsh was *not* a broker according to the Insurance Code because the statutory definition of "broker" requires that a broker "not be an agent of the insurer." RCW 48.17.020. Because Marsh was an appointed St. Paul agent, it does not qualify as a broker in this case.

Another Insurance Code provision clearly confirms Marsh can be a broker as to some relationships or transactions and an agent as to others, but cannot be a broker as to a transaction it is appointed as an agent:

> A licensed agent may be licensed as a broker and **be a broker as to insurers for which the licensee is not then appointed as agent.** A licensed broker may be licensed as and be an agent as to insurers appointing such agent. The **sole relationship** between a broker and an insurer as to which the licensee is **appointed as an agent shall**, as to transactions arising during the existence of such agency appointment, **be that of insurer and agent.**

RCW 48.17.270(1) (emphasis added). Thus, in Washington, when an insurer appoints a licensed broker/agent as its agent, as St. Paul did when it appointed Marsh as its agent, that broker/agent becomes the insurer's agent **as to all transactions** arising during the appointment. Factually, Marsh was unquestionably acting as the broker for the Meadow Valley Defendants when it shopped for insurance on its behalf, but when the product it considered or selected involved St. Paul (or any other insurer for whom it was an appointed agent), Marsh's status changed to that of agent of the insurer.

No Washington state court has interpreted RCW 48.17.270, and although one federal case interpreted the state statute, that case dealt with a different issue and is not

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 3

C05-0388TJZ

10383-026964  109181

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

controlling.[2]   However, in In Re Tutu Water Wells Contamination Litigation, 78 F. Supp. 2d 436, 448 (D.V.I. 1999), the court interpreted a statute of the Virgin Islands almost identical to RCW 48.17.270.

> A licensed agent may be licensed as a broker and be a broker as to insurers for which he is not then licensed as agent. A licensed broker may be licensed as and be an agent as to insurers appointing him as agent. The sole relationship between a broker and an insurer as to which he is licensed as an agent shall, as to transactions arising during the existence of such agency appointment, be that of insurer and agent.

V.I. Code Ann. Tit. 22 § 766.   The Tutu Water Wells court rejected an insurer's argument that the broker was a dual agent, and held, pursuant to this statute, that a broker/agent was an agent of the insurer for transactions during the course of the agency appointment:

> Cigna's first argument, **that the existence of a dual agency relationship created a question of fact for the jury, does not appear supported by Virgin Islands law**.  The Virgin Island Code provides, in pertinent part, that a "broker may be licensed as . . . an agent as to insurers appointing him as agent.  The **sole relationship** between a broker and an insurer as to which he is licensed as an agent **shall, as to transactions arising during the existence of such agency appointment, be that of insurer and agent.** See V.I. Code Ann. Tit 22 § 766 (1993) (emphasis added).  …**[T]he statute's mandate appears clear: an insurer is bound by all acts performed by its agent during the course of the agency relationship**....
>
> Cigna, however, contests the statute's applicability in the instant matter, arguing that since the statute "does not define the relationship between brokers and insureds, it does not preclude a finding of dual agency." (See Cigna Br. At 7).   **This argument misses the point: regardless of whether West Indies [the agent] was also acting on [the insured's] behalf with respect to the notice of claims, VI law has clearly established that, assuming the notification occurred during the agency relationship, West Indies was acting on behalf of the [insurers] as a matter of law.**

---

[2] The court is aware of Northwestern Nat'l Ins. Co. v. Federal Intermediate Credit Bank of Spokane, 839 F.2d 1366 (9th Cir. 1988), which discusses RCW 48.17.270 in the context of a broker who was appointed as an agent for lines of insurance (property and casualty) different from the line of insurance at issue in the lawsuit (marine), and stands for the proposition that the agency relationship is limited to the type of coverage the insurer has authorized in the appointment.  This court has already held that the case is of no assistance in this case.  9/7/06 Order on summary judgment motions, p. 16, fn. 7 (Docket No. 141).

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 4

C05-0388TJZ

10383-026964   109181

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

Id. (emphasis added).   Likewise, under Washington's nearly identically-worded statute, because St. Paul appointed Marsh as its agent for property and casualty insurance, and because the insurance at issue in this case is casualty insurance, the sole relationship between St. Paul and Marsh during the existence of that agency appointment is that of insurer and agent.  Thus, Marsh was St. Paul's agent as a matter of law.

Prosser Com'n Co., Inc. v. Guar. Nat'l Ins. Co., 41 Wn. App. 425, 700 P.2d 1188 (1985) did not involve the application of RCW 48.17.270.  In that case, the court summarized the relationship of the parties as:

> . . . the Commission brought this action against Guaranty alleging Guaranty violated its duty to defend or pay the Whitby judgment.  It also sued Francis Moore, its insurance broker, for failing to obtain adequate insurance protection.

Id. at 428.  The court then set forth its analysis of coverage, which contains no mention of conduct by the broker or other extrinsic evidence.  The court held that the liability of the Commission was covered under the policy, and reversed the trial court's dismissal of the claims against Guaranty.  The opinion concludes with the following observations regarding the claim asserted against Mr. Moore.

> At to Mr. Moore, the Commission contends the court erred in determining he was neither an apparent agent for Guaranty nor liable for failure to procure coverage for this incident.  While our determination of coverage disposes of the contention that Mr. Moore did not obtain coverage and supports the trial court's dismissal of the cause of action against Mr. Moore, the decision was also correct based on the finding no agency existed between Guaranty and Mr. Moore.  Generally, an insurance broker is the agent of the insured.  Whether the broker is also the agent of the insurer is a question of fact and depends upon what he is doing and for whom when the liability arises.  Additionally, there must be some evidence or fact from which a fair inference of authorization by the insurer may be deduced in order to make the broker the agent of the insurance company.  Here, the record supports the conclusion Mr. Moor was not authorized to act as Guaranty's agent.  [Internal citations omitted.]

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 5

C05-0388TJZ

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

Id. at 433.  In Prosser, there was no issue that Mr. Moore was the agent of the insured; the only issue was whether he was also the agent of the insurer.  Moreover, it appears that the Commission raised the apparent agent issue in an effort to make the insurer vicariously liable for his alleged negligence in failing to procure the proper coverage. Since the court determined that coverage existed, which also precluded a determination of negligence, the court's comments regarding agency are mere dicta.

      **2.**    **If RCW 48.17.270 is not determinative of Marsh's status, the common law also dictates that Marsh is St. Paul's agent**.

Even if the court finds that the "sole relationship" statute does not conclusively determine Marsh's status as St. Paul's agent, the common law dictates that Marsh is St. Paul's agent.  An independent insurance agent may be the agent of an insurer, even though the agent is licensed to sell insurance products for a variety of insurers, where the insurer has an agency appointment on file with the state Department of Insurance listing the agent as the insurer's agent, and the insurer has a written agency appointment agreement expressly authorizing the agent to transact business on behalf of the insurer as its agent.  E.g. Loehr v. Great Republic Ins Co., 226 Cal. App. 3d 727, 732-33, 276 Cal. Rptr. 667 (1991) (holding that the trial court committed error in not instructing the jury that an independent insurance agent was an agent of the insurer).

Thus, if insurance is written in companies which the agent does not represent, he or she is generally regarded as acting as a broker and as the agent of the insured in procuring insurance, whereas if the insurance is written in a company which he or she has been appointed as an agent, he or she is held to be the agent of the insurance company and not of the insured.  E.g. Solomon  v. Federal Ins. Co., 176 Cal. 133, 138,

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 6

C05-0388TJZ

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

167 P. 859 (1917) ("It is well settled that, where, in circumstances such as are presented here, an insurance agent requests insurance from a company which he does not represent, he is acting for the insured, who is responsible for misrepresentations in the application made out by the broker."); Norwalk Tire & Rubber Co. v. Manufacturers' Cas. Ins. Co., 109 Conn. 609, 145 A.44, 46 (1929) (agent, writing insurance in a carrier that it represented, held acting as carrier's agent under agency agreement and not as broker on behalf of insured); Ross v. Thomas, 45 Ill. App. 3d 705, 709, 360 N.E.2d 126 (1977) (broker who had no fixed or permanent relationship with an insurance company is not an agent of that insurance company when procuring insurance for his or her client); Lindstrom v. Employers' Indem. Corp., 146 Wash. 484, 487, 263 P. 953 (1928) (insurance agency, where not an accredited legal agent of insurer, was deemed agent of insured).  The fact that an insurer has regularly appointed agents does not preclude the finding that a broker not regularly appointed is the agent of the insurer in a particular transaction.  McCabe v. Hartford Acc. & Indem. Co., 90 N.H. 80, 4 A.2d 661, 664 (1939) ("It is of course entirely possible for the insurer, e.g., the insurance company, though having regularly appointed agents to also employ brokers upon particular occasions and in that event the broker will be primarily the agent of the insurer.").

> **3.**   **Even if Marsh is determined to be MVLLC's agent, Marsh's knowledge cannot be imputed to MVLLC to determine MVLLC's intention regarding the terms of the Association Policy**.

Under Washington law, the goal of contractual interpretation is to determine and effectuate the parties' mutual intent.  E.g. Santos v. Dean, 96 Wn. App. 849, 854, 982 P.2d 632 (1999).  Washington courts follow the objective theory of contracts, which requires "that we impute to a person an intention corresponding to the reasonable

1   meaning of **his** words and acts.  Petitioner's unexpressed impressions are meaningless

2   when attempting to ascertain the mutual intentions of the parties." Id. (emphasis added).

3   "[M]utual intent may be established directly or by inference – but any inference must be

4   based exclusively on the parties' objective manifestations." Id.

5          Even if the court allows the "dual agency" question to go to the jury and the jury

6   finds that Marsh was MVLLC's agent, Edith Jacks' knowledge cannot be imputed to

7   MVLLC for the purpose of ascertaining MVLLC's intention of what was to be covered by

8   the insurance policy negotiated by Ms. Jacks.  Flinn Realty Corp. v. Charter Const. Co.,

9   169 N.Y.S. 116, 181 App. Div. 610 (1918).  The court may rely only on MVLLC's own

10  objective manifestations.  Santos, 96 Wn. App. at 854.  In Flinn Realty, the plaintiff sued

11  for rescission of a contract for the exchange of properties on the ground of mistake.

12  Flinn Realty, 169 N.Y.S. at 117-18.  The defendant argued that the plaintiff had

13  knowledge of the actual facts because his agent, a broker, had such knowledge. Id.  The

14  court rejected this contention: "As to the fact of constructive notice by reason of his

15  agency, this fact is without significance, because here is a question of actual intention,

16  and actual intention can only be judged by actual knowledge and not by constructive

17  knowledge." Id.

18         Under statute and common law, Marsh is not the agent of MVLLC.  Even if Marsh

19  could be characterized as a dual agent, the knowledge of Edith Jacks may not be

20  imputed to MVLLC for purposes of determining MVLLC's intent.  In the absence of any

21  competent evidence demonstrating that MVLLC intended that the St. Paul Fire policy

22  exclude construction activities, St. Paul cannot prove that MVLLC shared its restrictive

23  intent.  As such, the admissible extrinsic evidence St. Paul has submitted in this case

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 8

C05-0388TJZ

10383-026964   109181

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

1   fails to resolve the ambiguity found by the court in its September 7, 2006 Order.   *Docket.*

2   *No. 141, p. 14.*   Hence, under well-settled Washington law, the ambiguities found by the

3   court must be construed in MVLLC's favor and mandate a finding of coverage under the

4   St. Paul fire policy.   *Id.*

5   **B.       COVERAGE UNDER THE ST. PAUL FIRE UMBRELLA POLICY**

6           The St. Paul Fire policy is actually a "package" policy consisting of several

7   separate policies, providing property protection, commercial general liability, auto liability,

8   and umbrella liability.   *Trial Ex. 9, at SPT 00722.*   The court has determined that the

9   policy is ambiguous based on the "few, scattered references to a 'community

10   association' and 'association activities,'" in the policy, which suggested to the court that

11   the policy may have been limited to homeowner association settings.   *Docket #141 at*

12   *14:5-10.*   However, the references that the court held created an ambiguity are all found

13   in the 22 numbered page section of the package policy described as "community

14   association package commercial general liability protection."   *Trial Ex. 9 at SPT 00780-*

15   *00801(hereafter "the primary policy").*   The court also noted certain descriptions of

16   parties under the heading "who is protected under this agreement" that might suggest an

17   ambiguity, including "Association," "Unit Owners," and "Developer."   *T9/7/06 Order*

18   *(Docket # 141); Trial Ex. 9 at SPT 00784.*

19           The umbrella coverage portion of the package policy has the same basic policy

20   structure as the primary policy.   *Trial Exhibit 9 at SPT 00805-00832 (hereafter "the*

21   *umbrella policy").*   However, the terms "community association" and "association

22   activities" are noticeably absent.   Also, under the heading "who is protected under this

23   agreement," there is no description of "Association," "Unit Owners," or "Developer."   *Trial*

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 9

C05-0388TJZ

10383-026964  109181

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374

TEL 206.623.9900  FAX 206.624.6885

1  *Ex. 9 at SPT 00815.*  Whereas the primary policy begins with the preamble "This liability

2  insuring agreement provides general liability protection for your association activities,"

3  *Trial Exhibit 9 at SPT 00780,* the equivalent preamble to the umbrella policy states "This

4  insuring agreement provides excess liability protection for your business."

5       The very words contained in the primary policy that caused the court to conclude

6  the primary policy is ambiguous are missing from the umbrella policy.   It necessarily

7  follows that if there is no ambiguity, the court is not entitled to consider extrinsic

8  evidence, and must conclude from the four corners of the umbrella policy that it provides

9  coverage for the liability of MVLLC represented by the covenant judgment settlement

10  entered in the underlying action.  Therefore, even if the jury finds Marsh to be the agent

11  of the Meadow Valley Defendants, and that finding causes the court to conclude there is

12  no coverage under the primary policy portion of the St. Paul Fire package policy,[3] the

13  jury should still decide the issues related to the Meadow Valley Defendants' claim for

14  breach of contract as to the umbrella policy portion of the St. Paul Fire package policy.

15  **C.   BURDEN OF PROOF ON BREACH OF CONTRACT CLAIMS**

16       Determining whether there is coverage is a two-step process.  <u>McDonald v. State</u>

17  <u>Farm</u>, 119 Wn.2d 724, 731, 837 P.2d 1000 (1992).  First, the insured must prove that the

18  loss falls within the policy's insuring agreement. <u>Id.</u>   Then, the burden shifts to the

19  insurance company to prove that a limitation or exclusion applies.  <u>Id.</u>

20

21

22  _____

[3] At the final pre-trial conference, the court indicated its final determination of coverage under the St. Paul
Fire policy would be coextensive with the jury's finding on agency – in other words, whichever party wins
23  the agency argument also wins the coverage argument as to that policy.

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 10

C05-0388TJZ

10383-026964  109181

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

1

**1.**   __What the Meadow Valley Defendants need to prove__.

To make their *prima facie* case under either St. Paul policy (both policies contain identical insuring clauses), the Meadow Valley Defendants must simply show (a) the Meadow Valley Defendants are legally required to pay as damages, (b) property damage sustained by the Association, (c) that happened while the policy in question was in effect, (d) and which is caused by an event (an event includes continuous or repeated exposure to substantially the same harmful conditions).   E-Z Loader Boat Trailers v. Travelers Indem. Co., 106 Wn.2d 901, 906, 726 P.2d 439 (1986). [4]

**a.   *Legal liability***

PUD No. 1 of Kittitas County v. International Ins. Co., 124 Wn.2d 789, 808 P.2d 1020 (1994) discusses several elements of the insured's burden of proof.  In that case, the court approved the following jury instruction:

> Plaintiffs have the burden of proving, by a preponderance of the evidence, all of the facts necessary to establish their claim for coverage under each of its insurance policies.  To meet this burden with respect to policies in effect during a policy period Plaintiffs must prove that they satisfied the terms and conditions of coverage ***and establish the existence of an occurrence or occurrences resulting in loss during the policy period***. [Emphasis by the court.]

Id. at 808.  The defendants objected that this instruction was inadequate because it did not require the insureds to prove they were actually liable to the underlying claimants in the context of a settlement prior to trial.  The court rejected the insurers' argument.

> The plaintiffs claim, however, that because this is a case to enforce a settlement, they need only prove that the allegation in the [underlying] claims would have been covered by the policies.

---

[4] In its opposition to the Meadow Valley Defendants' summary judgment motion, St. Paul, citing E-Z Loader, articulates the same description of the Meadow Valley Defendants' burden of proof, except it combines elements (a) and (b).  *(Docket No. 108, p. 19)*.

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 11

C05-0388TJZ

10383-026964   109181

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

* * *

We agree and hold that the Plaintiffs, in this action to collect insurance proceeds under the settlement agreement, need only prove the underlying claims were covered under the policies . . . .  To require claims to be actually proved in an action to enforce a settlement and collect insurance proceeds would defeat the purpose of the settlement agreements.  The [underlying] settlement was reached in part to avoid lengthy and difficult litigation of these very issues.

Id. at 809-810.

### b.     Property damage sustained by the Association.

In PUD No.1, not only were the insureds not required to prove actual liability; they were also not obliged to prove that 100% of the settlement amount was covered under the policies.

We also reject the Defendants' argument that the trial court erred when it failed to instruct the jury that it must allocate the settlement between covered and non-covered claims.   . . . [T]he claims based on intentional acts of the individuals (which are not covered) and the claims based on negligence (which are covered) consist of the same factual core and, thus, require no allocation by the jury.  Likewise, the damages arising from both the non-covered claims and the covered claims are the same and cannot be separated or allocated.  The trial court correctly kept this issue from the jury.  [Citations omitted.]

Id. at 810.  In this case, the primary distinction between covered and non-covered claims or damages is between liability for "property damage" (covered) and "construction defects" (non-covered).  The same rationale applies.  If there is no basis to allocate the settlement amount between the two, then the entire settlement amount is covered.  It necessarily follows that if there is a basis to allocate; St. Paul bears the burden of proof on the issue (discussed below).

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 12

C05-0388TJZ

10383-026964   109181

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

1

### c.    While the policy was in effect.

2    St. Paul does not seriously dispute that damage occurred during the three year

3    term of the St. Paul Fire policy, April 15, 2000 through April 15, 2003.  Conversely, the

4    term of the St. Paul Guardian policy is January 4, 1999 through February 4, 2000.

5    Because not all buildings had been completed by the time the policy expired, there may

6    be a limitation on the amount of coverage available for "completed work."[5]  However, this

7    does not mean that the Meadow Valley Defendants are required to prove that damage

8    occurred between the time a particular building was completed and the time the policy

9    expired.  The "completed work" coverage is contained within the "your work" exclusion.

10   The insuring language itself does not require the damage to occur after work is

11   completed, nor does the basis for the Meadow Valley Defendants' liability to the

12   Association distinguish between damages that began to occur before any building was

13   completed or after any policy expired.

14    Even a "minute" amount of "property damage" occurring during the policy period

15   will suffice to trigger the St. Paul Guardian policy:

16       [W]hen courts are dealing with property damage situations where damages
         slowly accumulate, courts have generally applied the exposure theory.  *So
17       long as there is tangible damage,* **even if minute**, courts have allowed
         coverage from that time. (Quoting from Ins. Co. of North America v Forty-
18       Eight Insulations, 633 F.2d 1212 (6th Cir. 1980).  [Emphasis by the court.]

19   Villella v. Public Employees Mut. Ins. Co., 106 Wn.2d 806, at 814, 725 P.2d 957 (1986).

20

21   [5] In its proposed jury instructions, St. Paul would have the court inform the jury that the number of
     completed buildings is four.  The Meadow Valley Defendants will present evidence that the correct number
22   is nine (counting the recreation building).  At this point, it is unclear whether the court intends to let the jury
     decide this issue or will itself hear the evidence and decide the issue based on a legal interpretation of the
23   policy definition of "completed work" based on whether each building constitutes a separate "work site,"
     and/or based on the requirement for a particular building to be "put to its intended use."

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 13

C05-0388TJZ

10383-026964   109181

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

1

2

        **d.**      **Caused by an "event" – progressive damage caused by continuous or repeated exposure to substantially the same harmful conditions.**

3

    Much of the damage at issue in the underlying action involves decay of building

4

components caused by unintended moisture intrusion.  The parties disagree as to the

5

extent of decay and when it becomes "property damage," but there does not seem to be

6

serious dispute that the cause of decay qualifies as an "event" under either St. Paul

7

policy.

8

        The question then becomes which insurer covered the damage – the
insurer at the time of the defective backfilling, at the time of the discovery of

9

the dry rot, or all insurers providing coverage during the total time period of
the undiscovered condition which progressively worsened.  The answer is

10

determined by a consideration of whether the term "accident" or
"occurrence" as used in the policy must of necessity be a single isolated

11

event or whether it can be a continuing condition or process.  The question
is not a novel one:

12

13

        "The accident mentioned in the policy need not be a blow but may be a
process.  It is not required that the injury be the result of some contact with
the bulldozer or the shelf or a rock hurled over from the shelf.  It is not

14

required to be sudden like an Alpine avalanche. . . A glacier moves slowly
but inevitably."

15

<u>Gruol Construction Co. v. Ins. Co. of North America</u>, 11 Wn. App. 632, 635-36, 524 P.2d

16

427 (1974). quoting <u>Travelers v. Humming Bird Coal Co.</u>, 371 S.W.2d 35, 38 (Ky. App.

17

1963).

18

    **2.**    <u>**What St. Paul needs to prove**</u>.

19

    If the insured proves that the loss falls within the policy's insuring agreement, the

20

burden shifts to the insurance company to prove that a limitation or exclusion applies.

21

<u>McDonald v. State Farm</u>, 119 Wn.2d at 731.

22

23

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 14

C05-0388TJZ

10383-026964   109181

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374

TEL 206.623.9900  FAX 206.624.6885

### a. Policy exclusions

In the present case, the only exclusion St. Paul has identified is applicable only to the St. Paul Guardian policy, is the "your work" exclusion and the exception to that exclusion where the work constitutes "completed work," and "the damaged completed work, or the completed work that causes the property damage, was done for you by others.[6] St. Paul's burden of proof therefore requires it to establish what portion of the total property damage represented by the $4,800,000 settlement is either (a) damage to work that was not "completed" within the definition of the policy, or (b) damage to work that was performed directly by HCI and not "done for you by others," *i.e.* by a subcontractor on HCI's behalf.

### b. Limitations on coverage – allocation between covered and non-covered claims or damages.

Before St. Paul can prove any allocation of the $4,800,000 settlement between "property damage" and "construction defects" or other non-covered amounts, St. Paul must first establish that there is a basis for allocation.  Where the covered and non-covered claims arise out of the same core facts, there is no basis for allocation.  PUD No. 1 of Kittitas County, 124 Wn.2d at 810.  If St. Paul proves a basis to allocate, St. Paul also bears the burden of proof on the amount of non-covered damage.

The trial court's finding that Prudential made no attempt to segregate the settlement in the instant case is amply supported. Prudential's own witness, Mr. Betts, testified that he would attempt to establish, either through jury

---

[6] Although St. Paul referred to the "owned property" exclusion in its opposition to the Meadow Valley Defendants' summary judgment motion to establish coverage under the St. Paul Fire policy, *Docket No. 108, pp. 21-22)*, St. Paul conceded at the final pre-trial conference that it was conceding this issue, since MVLLC sold the last unit January 31, 2002, fifteen months before the policy expired.  In any event, if St. Paul intends to rely on such an exclusion, it bears the burden of proof and it has not proposed a jury instruction that would enable the jury to allocate between damage covered and damage excluded under the owned property exclusion.

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 15

C05-0388TJZ

10383-026964   109181

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

1  interrogatories or through an understanding of the parties, which part of the
2  judgment or settlement would be applied to which allegation. The
   settlement agreement itself specified only that it involved "all claims" of the
3  parties. Consequently, the trial court did not err in ordering Prudential to
   pay the entire settlement.

4  Prudential Property & Cas. Ins. Co. v. Lawrence, 45 Wn. App. 111, 121, 724 P.2d 418

5  (1986).

6  **C.**    **PROPERTY DAMAGE**

7         Both St. Paul policies define "property damage" as

8      a.    Physical injury to tangible property of others, including all resulting
             loss of use of that property; or
9
10     b.    Loss of use of tangible property of others that isn't physically
             damaged.

11        None of the terms contained in the foregoing definition are defined.  Undefined

12  terms in an insurance contract must be given their popular and ordinary meaning.

13  Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group, 37 Wn. App. 621, 624,

14  681 P.2d 875 (1984). Relying on this rule of policy interpretation, the court in Lawrence

15  relied on dictionary definitions of several of these terms to determine that obstruction of

16  view constituted property damage.

17     "Damage" means "loss due to injury: injury or harm to person, property, or
       reputation".[7]
18
       "Use" means, among other things, "the act . . . of using something . . . the
19     privilege or benefit of using something"

20     "Property" in a thing consists not merely in its ownership and possession,
       but in the unrestricted right of use, enjoyment, and disposal. Anything
21     which destroys one or more of these elements of property to that extent
       destroys the property itself.

22  _____
    [7] In Overton v. Consolidated Ins. Co., 145 Wn.2d 417, 428, 38 P.3d 322 (2002), the court defined
23  "damage" as "the actual loss, injury, or deterioration of the property itself."

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

1

<u>Id.</u>, 45 Wn. App. at 118-19.  The same dictionary defines "injury" as:

2

3

"Injury," "hurt," "damage," "harm," and "mischief" are synonyms that mean in common the act or result of inflicting on a person or thing something that causes loss, pain, distress, or impairment.

4

5

<u>Webster's Third New International Dictionary, Unabridged</u> (Merriam-Webster 2002).

6

In this case, both parties' building envelope experts have used definitions of

7

property damage they have developed for purposes of their work that are substantially

8

less broad.  The court should preclude any of the parties' experts from rendering

9

opinions about the meaning of "property damage" in the policies, McDonald<u> v. State</u>

10

<u>Farm Fire & Cas. Co.</u>, 119 Wn.2d 724, 730, 837 P.2d 1000 (1992) (interpretation of the

11

terms of an insurance policy is a question of law for the court), and should give a

12

cautionary instruction regarding property damage as used in St. Paul's policies at the

13

time the first expert testifies, rather than the waiting to the end of the evidence..

14

**D.**   **<u>BAD FAITH</u>**

15

Both parties have proposed essentially the same pattern jury instructions

16

describing the elements and burden of proof on bad faith.  It is therefore unnecessary to

17

devote discussion to the issue in this trial brief.  Where the parties differ, and where the

18

court has itself expressed some uncertainty, concerns the meaning and effect of case

19

law describing (1) the remedy of coverage by estoppel, (2) the rebuttable presumption of

20

harm, and (3) covenant judgments.

21

Simply put, if the Meadow Valley Defendants prove one or more acts of bad faith

22

proximately caused them any prejudice or harm, St. Paul is estopped to deny coverage

23

or to prove any limitations or exclusions to coverage, and the covenant judgment amount

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 17

C05-0388TJZ

10383-026964   109181

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374

TEL 206.623.9900  FAX 206.624.6885

becomes the presumptive measure of the Meadow Valley Defendants' damage, which presumption can only be rebutted by a showing that the settlement was entered into through fraud or collusion.  St. Paul is foreclosed from rebutting the presumption because the trial court in the underlying action made an express finding there was no fraud or collusion.  Because St. Paul intervened and participated in the reasonableness determination, it is bound by that finding under collateral estoppel.

### 1.    Coverage by estoppel.

The coverage by estoppel remedy not only relieves the insured from proving that the specific loss is in fact covered under the insuring agreement, it also deprives the insurer of any policy defenses or exclusions that might otherwise apply.  "We feel it is appropriate to estop the insurer from arguing a coverage defense when the insurer breached the contract in bad faith."  Kirk v. Mt. Airy Ins. Co., 134 Wn.2d 558, 564, 951 P.2d 1124 (1998).

Safeco v. Butler, 118 Wn.2d 383, 823 P.2d 499 (1992) illustrates these principles.  In Butler, there was no coverage under Butler's homeowners' insurance policy with Safeco because the acts giving rise to the insured's liability did not arise from an "accident" as required by the insuring language of the policy.  Additionally, the policy contained an exclusion for intentional acts of the insured.  However, the court held that if the jury found bad faith, Safeco was estopped from denying coverage."  Id. at 392.

Butler addresses the distinction between the remedy of estoppel under a breach of contract claim, and under a tort claim for bad faith.  Safeco argued that bad faith was irrelevant because "estoppel cannot be used to expand the scope of insurance contracts. . . . if Hap Butler's act is not covered, then nothing Safeco did could create coverage

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 18

C05-0388TJZ

10383-026964   109181

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

where it did not exist." Id. at 392.  The court rejected Safeco's reliance on an exclusively contract based analysis.

> First, a Tank [v. State Farm, 105 Wn.2d 381, 715 P.2d 1133 (1986)] violation results in a cause of action which arises from the contract and the fiduciary relationship, which sounds in tort.  Any remedy must take into account all of the aspects of the insurer/insured relationship.  We cannot focus solely on the contract aspect of that relationship.

> Second, the remedy must take into account the purpose of creating a bad faith cause of action.  If the only remedy available were the limits of the contract, then there would be no distinction between an action for an insurer's wrongful but good faith conduct, and an action for its bad faith conduct.  An insurer could act in bad faith without risking any additional loss. This would render Tank meaningless.  An estoppel remedy, however, gives the insurer a strong disincentive to act in bad faith.  Therefore, an estoppel remedy better protects the insured against the insurer's bad faith conduct.

Id. at 393-94.

## 2.    **Rebuttable presumption of harm**.

Butler describes a claim for bad faith as sounding in tort, and recognizes that an essential element of any tort claim is that the alleged wrongful act caused harm.  Id. at 389.  However, the court then recognized a rebuttable presumption of harm.  It did so because:

> The insured should not have the almost impossible burden of proving that he or she is demonstrably worse off because of the insurer's actions.  Imposing a rebuttable presumption of prejudice relieves the insured of that almost impossible burden.   This reflects the fiduciary aspects of the insured/insurer relationship.

Id. at 390.  And in Transamerica Ins. Group v. Chubb & Son, Inc., 16 Wn. App. 247, 554 P.2d 1080 (1976), review denied, 88 Wn.2d 1015 (1977), the court held that an insured established prejudice as a matter of law where the insurer controlled the defense for ten months before issuing a reservation of rights.  The court noted:

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 19

C05-0388TJZ

10383-026964  109181

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

> The course cannot be rerun, no amount of evidence will prove what might have occurred if a different route had been taken.  By its own actions, [the insurer] irrevocably fixed the course of events concerning the law suit for the first 10 months.  Of necessity, this establishes prejudice.

Id. at 252.

> Finally, imposing a presumption of prejudice only after the insured shows bad faith adequately protects the competing societal interests involved.  It provides a meaningful disincentive to insurers' bad faith conduct while protecting insurers from frivolous claims.

Safeco v. Butler, 118 Wn.2d at 392.

Finally, although Butler implied that the insurer could rebut the presumption of harm through any evidence establishing that the insured did not suffer actual harm, the Washington Supreme Court has subsequently clarified the standard required for the insurer to rebut the presumption.  In Besel v. Viking Ins. Co. of Wis., 146 Wn.2d 730, 738-39, 49 P.3d 887 (2002), the court reviewed proceedings in the trial court approving a covenant judgment settlement as reasonable.

> Once the court determined the covenant judgment was reasonable, the burden shifted to Viking to show the settlement was the product of fraud or collusion.  Having failed to meet this burden, Viking was liable for the full settlement amount.

Id. at 739.  And, in Truck Insurance Exchange v. Vanport Homes, Inc., 147 Wn.2d 751, 755, 58 P.3d 276 (2002) the court declared more universally:

> We hold that were an insurer acts in bad faith in refusing to defend, the settlements entered into by insureds with third parties and approved by a court as reasonable will be presumed to be reasonable; such presumption may be overcome by the insurer upon a showing that the settlements were a product of fraud or collusion.

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

1          3.      **Covenant judgments.**

2          In <u>Besel</u>, the court reviewed the development of jurisprudence discussing but

3  often not applying (because appeals often arise from trial court dismissals or certified

4  questions of federal courts rather than judgments on the merits) the principles underlying

5  the coverage by estoppel and rebuttable presumption of harm remedies.   The court

6  observed that the coverage by estoppel remedy applies equally to a verdict against the

7  insured as it does to a settlement the insured is forced to enter into as a result of bad

8  faith conduct by an insurer.   <u>Id.</u> at 735-36.   The court also noted prior case law

9  recognizing that an agreement not to execute the judgment against the insured does not

10  preclude a showing of harm.   <u>Id.</u> at 736.   The court confirmed that the principles first

11  announced in <u>Butler</u> do not depend on how an insurer acted in bad faith, whether by

12  poorly defending a claim under a reservation of rights, refusing to defend a claim, or

13  failing to properly investigate a claim.   <u>Id.</u> at 737.   The court next expressly approved the

14  factors to be considered in evaluating the reasonableness of settlements announced in

15  <u>Glover v. Tacoma Gen. Hosp.</u>, 98 Wn.2d 708, 717, 658 P.2d 1230 (1983) applicable to

16  settlements between joint tortfeasors and subsequently recognized by the Court of

17  Appeals in <u>Chaussee v. Maryland Casualty Co.</u>, 60 Wn. App. 504, 512, 803 P.2d 1339

18  (1991) as equally applicable to covenant judgments between claimants and insureds.

19  Upon conclusion of this survey of the law, the court announced:

20          We hold the amount of a covenant judgment is the presumptive measure of
        an insured's harm caused by an insurer's tortious bad faith if the covenant
21          judgment is reasonable under the <u>Chaussee</u> criteria.   This approach
        promotes reasonable settlements and discourages fraud and collusion. . . .
22          Finally, the <u>Chaussee</u> criteria protect insurers from excessive judgments
        especially, where as here, the insurer has notice of the reasonableness

23

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 21

C05-0388TJZ

**STAFFORD FREY COOPER**

PROFESSIONAL CORPORATION

601 Union Street, Suite 3100
Seattle WA 98101.1374

TEL 206.623.9900  FAX 206.624.6885

1

2

hearing and an opportunity to argue against the settlement's reasonableness.

Id. at 738-39.

3

This outcome is not draconian when considered in relation to the burden of proof

4

and measure of damage for breach of the insurance contract.   Under a breach of

5

contract claim, although an insured is required to prove that the loss falls within the

6

insuring agreement of the policy, McDonald, it is not part of the insured's burden to prove

7

actual liability under the settlement, or that 100% of the settlement amount represents

8

damages covered under the policy.  PUD No. 1.  In a breach of contract case, although

9

the insurer is entitled to prove that a portion of the insured's liability is subject to a

10

limitation or exclusion under the policy, E-Z Loader, if there is no basis for allocation, the

11

insured is entitled to reimbursement for both covered and non-covered aspects of the

12

claim.  PUD No. 1.

13

In this case, the covenant judgment has already been determined to be

14

reasonable.   Thus, the burden shifts to St. Paul to demonstrate that the covenant

15

judgment was the product of fraud or collusion.  Besel, 146 Wn.2d at 739.  St. Paul is

16

foreclosed from re-litigating this issue because St. Paul intervened and participated in

17

the reasonableness determination in the underlying action, where the trial judge made a

18

specific finding that there was no fraud or collusion.  St. Paul Fire is thus collaterally

19

estopped from arguing fraud or collusion because it has already had the opportunity to

20

fully and fairly argue this issue.  See, Christiansen v. Grant County Hosp. Dist. No. 1,

21

152 Wn.2d 299, 307, 96 P.3d 957 (2004).

22

23

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 22

C05-0388TJZ

10383-026964   109181

STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900  FAX 206.624.6885

Therefore, under well-settled Washington law, the underlying covenant judgment is the presumptive measure of the Meadow Valley Defendants' harm.  Consequently, if the jury finds bad faith, then the court should enter damages in the amount of $4.8 million, the amount of the covenant judgment, and the quantum of damages should not be submitted to the jury.

DATED this 14th day of September, 2006.

STAFFORD FREY COOPER


By: _____/s/ Kenneth Hobbs via ECF_____
A. Richard Dykstra, WSBA #5114
Kenneth F. Hobbs, WSBA #15309
Stephanie L. Grassia, WSBA #34907
601 Union Street, Suite 3100
Seattle, WA  98101
Phone:  206-623-9900
Fax:      206-624-6885
E-mails: rdykstra@staffordfrey.com
              khobbs@staffordfrey.com
              sgrassia@staffordfrey.com
Attorneys for Meadow Valley Defendants

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that I electronically filed a copy of this document entitled

3

MEADOW VALLEY DEFENDANTS' TRIAL BRIEF with the Clerk of the Court using the

4

CM/ECF system, which will send notification of such filing to the following individuals:

5

6

Stephanie Andersen
William Chris Gibson
GORDON & POLSCER LLC
1000 Second Ave., STE 1500
Seattle, WA  98104
Phone:  206-223-4226
Fax:  206-223-5459
Email:  usdc-wd-wa@gordon-polscer.com
**Attorney for Plaintiff**
**St. Paul Fire and Marine Ins. Co.**

Daniel F. Mullin
Tracy A. Duany
JACKSON & WALLACE
701 Fifth Avenue, Suite 2850
Seattle, WA  98104
Phone:  206-386-0214
Fax:  206-386-0216
Email:  dmullin@jacksonwallace.com
**Attorney for Defendant**
**Admiral Ins. Co.**

7

8

9

10

William F. Knowles, WSBA #17212
COZEN O'CONNOR
1201 Third Avenue, Suite 5200
Seattle, WA  98101
Phone:  206-340-1000
Fax:206-621-8783
WKnowles@Cozen.com
**Attorney for Third Party Defendants**
**Safeco Insurance Company and**
**American Economy Insurance Company**

11

12

13

14

15

    Dated this 14th day of September 2006 at Seattle, Washington.

16

17

18

              /s/ Kenneth Hobbs via ECF
        Kenneth F. Hobbs, WSBA #15309
        Stafford Frey Cooper
        601 Union Street, Suite 3100
        Seattle, Washington 98101
        Phone:  206.663.9900
        Fax:  206.624.6885
        Email:  sgrassia@staffordfrey.com

19

20

21

22

23

MEADOW VALLEY DEFENDANTS'
TRIAL BRIEF - 24

C05-0388TJZ

10383-026964  109181

## STAFFORD FREY COOPER

PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101.1374
TEL 206.623.9900 FAX 206.624.6885