UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation and ST. PAUL GUARDIAN INSURANCE COMPANY, a Minnesota corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HEBERT CONSTRUCTION, INC., a Washington corporation; MEADOW VALLEY, LLC, a Washington limited liability company; ROGER and SHELLY HEBERT, individually and the marital community thereof; HENRY and KAREN HEBERT, individually and the marital community thereof; ANDRZEJ and ROMA LAWSKI, individually and the marital community thereof; JAMES and ANNE KOSSERT, individually and the marital community thereof; and ADMIRAL INSURANCE COMPANY, a Delaware Company,<br><br>Defendants. | No. C05-388Z<br><br>ORDER |

This matter comes before the Court on the Meadow Valley Defendants' Application for Olympic Steamship Attorneys' Fees, docket no. 204. The Court heard oral argument from the parties on December 13, 2006. After hearing from the parties, the Court ordered supplemental briefing on the questions of reasonable attorneys' fees, successful claims, and

ORDER - 1

whether a multiplier should be applied.  See Minute Entry for Proceedings on December 13, 2006, docket no. 233.  The Court has now considered the Meadow Valley Defendants' Supplemental Brief in Support of Olympic Steamship Fees, docket no. 234, the Second Supplemental Hobbs Declaration, docket no. 235, and St. Paul's Supplemental Opposition, docket no. 239, as well as the underlying Motion, Opposition, Reply, and the various supporting declarations and affidavits.  The Court now being fully informed hereby GRANTS IN PART and DENIES IN PART the Meadow Valley Defendants' Application for Olympic Steamship Attorneys' Fees, docket no. 204.

## BACKGROUND

On September 5, 2003, and November 24, 2004, the Meadow Valley Owners Association filed complaints in King County Superior Court against two defendants based on alleged construction defects in a 78-unit condominium project known as the Meadow Valley Condominiums.  The Association brought claims against Meadow Valley LLC ("MVLLC"), the developer of the Project, and Roger Hebert, the manager of MVLLC.  In turn, MVLLC brought third-party claims against Hebert Construction, the general contractor for the Project, and various individuals.[1]  On September 19, 2005, the Association entered into a stipulated judgment against the Meadow Valley Defendants for the sum of $6,400,000.  See Hobbs Decl., docket no. 202, Ex. B (Stipulated Judgment).  The judgment included $4,800,000 for repair costs and $1,600,000 in attorneys' fees.  Id.  The present action was initiated when St. Paul filed a declaratory judgment action seeking a judgment that it had no duty to defend or indemnify the Meadow Valley Defendants.  Compl., docket no. 1 at 8-9.

On September 18, 2006, a jury trial began on the Meadow Valley Defendants' various claims against St. Paul.  The Jury returned a verdict on September 28, 2006.  See Special

---

[1] The individual Meadow Valley Defendants include Roger and Shelly Hebert, Henry and Karen Hebert, Andrzej and Roma Lawski, and James and Anne Kossert.  MVLLC, Hebert Construction, and the individual Meadow Valley Defendants are collectively referred to as the "Meadow Valley Defendants."

ORDER - 2

Verdict, docket no. 186. The Jury found that St. Paul did not act in bad faith and did not engage in unfair or deceptive acts in violation of Washington's Consumer Protection Act. Id. at 1-2. The Jury found that there was $322,032.45 in property damage to buildings 7, 8, 15, and 16 during the Guardian policy period; and $1,869,198.30 in property damage occurred at the Meadow Valley Condominiums during the St. Paul Fire policy period. Id. at 2. The Court subsequently ruled that there was no coverage for construction defect under the St. Paul Fire policy. See Minute Entry for Proceedings on December 13, 2006, docket no. 233.

## DISCUSSION

The Meadow Valley Defendants seek attorneys' fees and expenses incurred to establish coverage under Olympic Steamship Company, Inc. v. Centennial Insurance Company, 117 Wn.2d 37 (1991). In initial briefing, the parties allocated attorneys' fees and costs between successful and unsuccessful claims as they deemed appropriate and reasonable. See Hobbs Decl., docket no. 206, Ex. B (Recap of Meadow Valley Defendants' Request for Olympic Steamship Fees and Expenses); see also Gordon Decl., docket no. 215. Meadow Valley sought $423,952.93 in fees and expenses for successful claims, and a multiplier of 1.5, based on the contingent nature of success, for a total request of $635,929.40.[2] St. Paul contended that Meadow Valley was entitled to limited, if any, attorneys' fees based on its failure to comply with policy terms and its "limited" success at trial. St. Paul further contended that Meadow Valley was entitled, at most, to an attorneys' fees and costs award of $290,563.64.[3] St. Paul also contends that Meadow Valley is not entitled to a multiplier. The parties have now provided additional, corrected documentation

---

[2] Errors in Meadow Valley's initial briefing and documentation were corrected in the Supplemental Declaration of Ken Hobbs, docket no. 208.

[3] "Only $38,110.97 is attributable to the taxed costs issue; an additional $252,453.37 is attributable to St. Paul Guardian policy." See Opp'n, docket no. 212, at 23:5-6.

ORDER - 3

in support of their respective request, and opposition, to attorneys' fees pursuant to Olympic Steamship.[4]

Under Washington law, an insured holds a broad right to recover attorneys' fees incurred for the purpose of establishing insurance coverage:

> We also extend the right of an insured to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured, regardless of whether a lawsuit is filed against the insured. Other courts have recognized that disparity of bargaining power between an insurance company and its policyholder makes the insurance contract substantially different from other commercial contracts. When an insured purchases a contract of insurance, it seeks protection from expenses arising from litigation, not "vexatious, time-consuming, expensive litigation with his insurer." Whether the insured must defend a suit filed by third parties, appear in a declaratory action, or as in this case, file a suit for damages to obtain the benefit of its insurance contract is irrelevant. In every case, the conduct of the insurer imposes upon the insured the cost of compelling the insurer to honor its commitment and, thus, is equally burdensome to the insured. Further, allowing an award of attorney fees will encourage the prompt payment of claims.

Olympic Steamship Company Inc. v. Centennial Insurance Company, 117 Wn.2d 37, 53 (1991) (internal citation omitted). Bad faith need not be shown to recover attorneys' fees under Olympic Steamship. See Leingang v. Pierce County Medical Bureau, Inc., 131 Wn.2d 133, 149 (1997).

An insured is entitled to attorneys' fees where the insured litigates an issue of coverage, but not if the issue is merely a dispute about the value of a claim. Leingang, 131 Wn.2d at 146. In determining an appropriate award, the Court must segregate time spent on successful claims from hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time. Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597 (1985). The total number of hours reasonably expended is multiplied by the reasonable hourly rate of compensation. Fees for non-lawyer personnel may be properly requested as part of an

---

[4] The Court previously rejected St. Paul's argument that Meadow Valley was not entitled to recover attorneys' fees because Defendants failed to comply with a "consent to settle" provision in the policy. See Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 389 (1986) ("In a reservation-of-rights defense, it is the insured who may pay any judgment or settlement. Therefore, it is the insured who must make the ultimate choice regarding settlement."); accord Thomas V. Harris, Washington Insurance Law, § 17.7, at 17-15 (2d ed. 2006).

ORDER - 4

Olympic Steamship attorney fee award. See McGreevy v. Oregon Mutual Ins. Co., 90 Wn. App. 283, 292 (1998); see also Absher Construction Co. v. Kent School District, 79 Wn. App. 841, 845 (1996).

**1.   Attorneys' Fees Requested.**

The Meadow Valley Defendants requested the following attorneys' fees and costs in connection with establishing insurance coverage in this litigation:

| **Invoice/Matter** | **Fees/Expenses** | **Percentage** | **Total Request** |
|---|---|---|---|
| **General.** | $299,525.72 | 100 | $299,525.72 |
| **2005 General.** | $33,291.50 | 100 | $33,291.50 |
| **Bad Faith.** | $52,077.35 | 0 | - |
| **Admiral.** | $17,527.50 | 0 | - |
| **Underlying Appeal.** | $16,108.92 | 50 | $8,054.46 |
| **Summary Judgment.** | $64,190.00 | 25 | $16,047.50 |
| **Trial.** | $70,821.82 | 25 | $17,705.46 |
| **St. Paul Fire.** | $21,689.18 | 0 | - |
| **Levin & Stein (Other)** | $16,306.00 | 0 | - |
| **Levin & Stein Fees (2005)** | $48,188.25 | 100 | $48,188.25 |
| **Post Trial** | $47,257.43 | 100 | $47,257.43 |
| **Total** | | | **$471,210.36** |

See Supp. Hobbs Decl., docket no. 208, ¶ 4, Ex. R; see also Second Supp. Hobbs Decl., docket no. 235, Ex. A. In supplemental briefing in response to the Court's concern with over-allocation of time entries to the "General Insurance" category, the Meadow Valley Defendants reduced the amount of their request by $76,700 to account for unsuccessful post trial activities, trial preparations, and other items erroneously included in the prior request. The Meadow Valley Defendants' pre-multiplier request, including the downward adjustment, is therefore $394,600. Second Supp. Hobbs Decl., docket no. 235, Exs. B, C.

St. Paul's Supplemental Opposition, docket no. 239, provides little substantive analysis of the time actually spent by the Meadow Valley Defendants in this litigation. See

ORDER - 5

Supp. Opp'n, docket no. 239, at 5 n.6. Instead of considering whether the hours spent by the Meadow Valley Defendants' attorneys were reasonable, St. Paul offers a different approach. St. Paul looks at successful claims and attempts to estimate a reasonable amount of attorneys' fees and costs that might have been spent on each particular claim. However, estimating attorneys' fees in a retrospective evaluation of time entries is largely unhelpful and irrelevant.

Washington law provides the insured with the right to "recoup attorney fees," see Olympic Steamship, 117 Wn.2d at 53, which requires an evaluation of the actual attorneys' fees incurred, with regard to the reasonableness of those attorneys' fees. Accordingly, the Court begins its analysis with the actual time entries submitted by attorneys for the Meadow Valley Defendants.

**2.   Attorneys' Fees Award.**

Meadow Valley now claims attorneys' fees and expenses of $394,600. Meadow Valley divided attorneys' fees and costs into the following categories:

1. Insurance Matters. Hobbs Decl., docket no. 206, Ex. F.
2. Bad Faith. Id., Ex. G.
3. Admiral. Id., Ex. H.
4. Underlying Appeal. Id., Ex. I.
5. Summary Judgment. Id., Ex. J.
6. Trial. Id., Ex. K.
7. St. Paul Fire/Umbrella. Id., Ex. L.
8. Levin & Stein (Other). Id., Ex. M.
9. Post Trial Attorneys' Fees. Hobbs Reply Decl., docket no. 217, Ex. D.

See Hobbs Decl., docket no. 206, ¶ 5. The Court's detailed review of the categories and associated time entries and description, in advance of oral argument, gave rise to concern that time entries had been "over-allocated" to the "Insurance Matters" category, for which

ORDER - 6

Meadow Valley sought 100-percent reimbursement. For "Insurance Matters," Meadow Valley claimed the expenditures were required regardless of relative success on each claim. At oral argument, the Court pointed out various miscategorized entries. See, e.g., Hobbs Decl., docket no. 206, Ex. F at 48, 51 (JWA 5/04/2006, KFH 5/04/2006, KFH 5/25/2006) (summary judgment tasks improperly included in the "Insurance Matters" category).

In supplemental briefing, the Meadow Valley Defendants refined their request for attorneys' fees and costs. The Second Supplemental Hobbs Declaration, docket no. 235, details the Meadow Valley Defendants' reductions in the attorneys' fees request for activities such as the drafting of jury instructions, trial briefs, and pre-trial orders, all of which relate to claims pursued at trial. Those claims are subject to a reduction for proportionate success. See Second Supp. Hobbs Decl., docket no. 235, at ¶ 4, Ex. C. The analysis in St. Paul's Supplemental Opposition lacks sufficient detail or analysis to allow the Court to discern the reasoning behind St. Paul's requested reductions, with regard to the time spent on various tasks by the Meadow Valley Defendants. See Supp. Opp'n, docket no. 239, at 5 n.6.[5] The footnote which addresses allocation and reduction of Meadow Valley's attorneys' fees and costs does not provide sufficient information to develop or explain St. Paul's requested reductions.

The Meadow Valley Defendants' analysis of attorneys' fees and costs presents a straight-forward and logical approach to determining an appropriate award of attorneys' fees and costs under Olympic Steamship. The reductions in response to the Court's concerns at oral argument are not seriously challenged by St. Paul, and the Court's review of these reductions indicates that Meadow Valley has appropriately responded to the Court's concerns and direction. In addition, the Court's review of all time entries, in light of the

---

[5] At oral argument, the Court rejected the methodology relied upon by St. Paul for analyzing Meadow Valley's attorneys' fees and costs. The method was arbitrary, its reasoning was unclear, and the supporting documentation was unreadable in many cases. Moreover, St. Paul failed to set forth adequate reasoning for its attorneys' fee reductions. See Gordon Decl., docket no. 215, Exs. B, C.

ORDER - 7

supplemental reductions, indicates that Meadow Valley's request for attorneys' fees and costs provides full consideration of hourly rates and hours spent, as well as adjustments for duplicated efforts, unproductive time, and time spent on unsuccessful claims. See Bowers, 100 Wn.2d at 598. The Court finds the reduced number of hours and the rates are reasonable. The Court also finds that the Meadow Valley Defendants' allocation of fees to successful claims is reasonable and appropriate. Accordingly, the Court GRANTS the Meadow Valley Defendants' request for attorneys' fees and costs based on the lodestar calculation set forth in the Hobbs declarations in the amount of $394,600.

**3.     Multiplier**

The Meadow Valley Defendants request the application of a multiplier of 1.5 to the Court's award of attorneys' fees and costs, based on the contingent nature of the Defendants' success in this case. The Court may apply a multiplier to adjust the lodestar calculation upward or downward, within the Court's discretion. See Mahler v. Szucs, 135 Wn.2d 398, 434 (1998). The Court may consider an adjustment based on the "chances of success in the litigation" and the quality of the work performed. Bowers, 100 Wn.2d at 598. The burden of justifying any deviation from the lodestar rests on the party proposing the deviation. Id.

Meadow Valley urges that a multiplier is appropriate because its lodestar request is based on the same rates charged to non-contingent clients. Meadow Valley claims the rates charged are competitive in the local legal community, and it notes the high quality of work performed by its attorneys in this case. Meadow Valley also claims that this case presented "novel and difficult" legal questions, and that the "results obtained were reasonable in relation to the resources invested." See Application for Attorneys' Fees, docket no. 204, at 11.

Washington law does not require the application of a multiplier in every contingency fee case. See Faraj v. Chulisie, 125 Wash.App. 536, 550, 105 P.3d 36 (2004) (recognizing that multipliers can be appropriate in contingency cases but declining to apply one where the

ORDER - 8

trial court did not). St. Paul argues that a multiplier is inappropriate in this case because the case was not a "high risk" case where there was a likelihood of no recovery.

The "chances of success in the litigation" are reflected, in this case, in the parties' contingent fee arrangement. See Second Supp. Hobbs Decl., docket no. 235, ¶ 9 ("[t]hese percentages are less than a 'standard' 33% contingent fee arrangement . . ."). In addition, St. Paul notes that the Meadow Valley Defendants had confidence in their prospects for recovery:

> We also expected there would be some ability to prove property damage under the Guardian policy, but recognized a limitation both as to the number of buildings completed and a short period of time in which damage could have started after completion.

Second Supp. Hobbs Decl., docket no. 235, ¶ 9.

In this case, the Meadow Valley Defendants were successful on those claims where the chances of success were high. They recovered under the Guardian policy, and recovered attorneys' fees as taxed costs. However, other elements of the Meadow Valley Defendants case were higher risk: the chances of success in the litigation were not great. On those claims, the Meadow Valley Defendants were unsuccessful. The Meadow Valley Defendants were not successful on other policies, did not prove insurance bad faith, and failed to establish violations of Washington's Consumer Protection Act. St. Paul urges that the Meadow Valley Defendants' limited success should result in the denial of their request for a multiplier.

The Court has also considered two cases cited by the Meadow Valley Defendants in support of the application of a multiplier, Perry v. Costco Wholesale, Inc., 123 Wn. App. 783 (2004), and Pham v. City of Seattle, ___ Wn.2d ___, 2007 WL 273517 (Feb. 1, 2007). Both stand for the proposition that the Court may not consider irrelevant evidence or factors in determining whether a multiplier is appropriate. "[O]ccasionally a risk multiplier will be warranted because the lodestar figure does not adequately account for the high risk nature of a case." Pham, 2007 WL 273517, at *7. In Perry, the Washington Court of Appeals

ORDER - 9

1  disapproved the trial court's refusal to award a multiplier based solely on the proportionality
2  of the total fees award to the recovery. 123 Wn. App. at 808-09. In Pham, the Washington
3  Supreme Court noted the trial court had improperly considered the plaintiffs' "inability to
4  articulate their claims as justification for denying the multiplier." 2007 WL 273517, at *8.
5  In this case, however, the Court's consideration of a multiplier centers on the nature of the
6  case and the risks associated with the Meadow Valley Defendants' various successful claims.

7  Under all the circumstances a multiplier based on the contingent nature of success in
8  this case is not appropriate. Measured from the outset, this was not a "high risk" case, which
9  would make an upward adjustment based on the contingent nature of the case appropriate.
10 The claims on which the Meadow Valley Defendants prevailed were not high risk claims and
11 as such, a multiplier would not be appropriate. The Court also finds that a multiplier based
12 on the quality of work would not be appropriate in this case. While the attorneys for the
13 Meadow Valley Defendants performed admirably, the quality of their work was reflected in
14 their hourly rates. See Olivine Corp. v. United Capital Ins. Co., 105 Wn. App. 194, 203-04
15 (2001) ("[T]he reasonable hourly rate should almost always reflect the quality of the work.").
16 Accordingly, the Court DENIES the Meadow Valley Defendants' request for the application
17 of a multiplier.

18 **CONCLUSION**

19 For the reasons set forth in this Order, the Court GRANTS IN PART and DENIES IN
20 PART the Meadow Valley Defendants' Application for Olympic Steamship Attorneys' Fees,
21 docket no. 204. The Meadow Valley Defendants' application for attorneys' fees and costs is
22 GRANTED in the amount of $394,600; Defendants' request for the application of a
23 multiplier is DENIED.
24 //
25 //
26 //

ORDER - 10

IT IS SO ORDERED.

DATED this 15th day of February, 2007.

s/ Thomas S. Zilly

Thomas S. Zilly
United States District Judge

ORDER - 11