1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                   AT SEATTLE

8

9   ST. PAUL FIRE AND MARINE
    INSURANCE COMPANY, a Minnesota
10  corporation and ST. PAUL GUARDIAN          No.  C05-388Z
    INSURANCE COMPANY, a Minnesota
11  corporation,
                                               FINDINGS OF FACT AND
12                        Plaintiffs,          CONCLUSIONS OF LAW

13  v.

14  HEBERT CONSTRUCTION, INC., a
    Washington corporation; MEADOW
15  VALLEY, LLC, a Washington limited
    liability company; ROGER and SHELLY
16  HEBERT, individually and the marital
    community thereof; HENRY and KAREN
17  HEBERT, individually and the marital
    community thereof; ANDRZEJ and ROMA
18  LAWSKI, individually and the marital
    community thereof; JAMES and ANNE
19  KOSSERT, individually and the marital
    community thereof; and ADMIRAL
20  INSURANCE COMPANY, a Delaware
    Company,
21
                          Defendants.
22

23       This matter comes before the Court following Third-Party Defendant American

24  Economy Insurance Company's ("AEIC") motion for summary judgment barring claims,

25  docket no. 57, which was denied without prejudice.  See Order, docket no. 115, at 22.  In

26  denying AEIC's motion, the Court declined to exercise its inherent equitable power to enter

ORDER -  1

1  a contribution claim-bar order because the facts surrounding AEIC's settlement with its

2  insureds were insufficiently developed.  See id.  Pursuant to AEIC's alternative motion for a

3  reasonableness hearing, docket no. 123, the Court set a reasonableness hearing for the

4  purpose of considering AEIC's settlement and the entry of a contribution claim-bar order.

5  See Minute Entry, docket no. 198.

6      The Court conducted the reasonableness hearing on December 18, 2006.  During the

7  hearing the Court heard oral testimony from Tamara Dragseth and Arthur Schroeder.  The

8  Court also considered the declarations of Douglas Weigel, Steven Jager, and Arthur

9  Schroeder.  Admiral Insurance Company ("Admiral") withdrew the Declaration of George

10  Calbom based on the parties' stipulation that Interior Motives, Inc. supplied and installed the

11  tile and grout for the condominium unit entry ways and bath and shower surrounds.  After

12  the hearing, the Court advised the parties to file proposed findings of fact and conclusions of

13  law, as well as additional briefing on the import of Safeco Ins. Co. of America v. Superior

14  Court, 140 Cal. App. 4th 874 (2006) and the question of allocation between insurers.

15      After considering the evidence presented during the hearing, or otherwise submitted

16  by Admiral and AEIC prior to December 18, 2006 as part of motions practice, and the

17  supplemental briefs and filings of both parties, the Court hereby enters the following findings

18  of fact and conclusions of law.

19  **I.    BACKGROUND**

20      This case involves insurance coverage claims related to a condominium defect suit

21  adjudicated in King County Superior Court.  On September 5, 2003, and November 24,

22  2004, the Meadow Valley Owners Association ("Association") filed complaints in state court

23  against two defendants based on alleged construction defects in a 78-unit condominium

24  project known as Meadow Valley Condominiums (the "Project").  The Association brought

25  claims against Meadow Valley LLC ("MVLLC"), the developer of the Project, and Roger

26  Hebert, the manager of MVLLC.  In turn, MVLLC brought third-party claims against Hebert

1  Construction, Inc. ("Hebert Construction"), the general contractor for the Project, and Hebert

2  Construction brought fourth-party claims against several of its subcontractors, one of which

3  was Interior Motives.

4  **A.     AEIC's Settlement in the State Court Action.**

5         During the course of the state court litigation, AEIC reached a settlement agreement

6  with the defendants it insured, including MVLLC, Hebert Construction, and Interior

7  Motives.  Knowles Decl., docket no. 60, Ex. C (Settlement Agreement).  AEIC's potential

8  liability in the state court action was based on possible defense and indemnification

9  obligations as an insurer for Interior Motives, MVLLC, and Hebert Construction from 2001

10  through 2004.  See id., Ex. A (Insurance Policies).  The settlement released all claims for the

11  sum of $115,000.  Id., Ex. C (Settlement Agreement).  AEIC paid $86,250 of the total

12  settlement.

13  **B.     Association's Overall State Court Action Settlement.**

14         On September 19, 2005, the Association entered into a stipulated judgment against

15  MVLLC and Hebert Construction in the amount of $6,400,000.  See id, Ex. B (Stipulated

16  Judgment).

17  **C.     Federal Action.**

18         This federal case was initiated when Plaintiffs St. Paul Fire and Marine Insurance

19  Company and St. Paul Guardian Insurance Company (collectively, "St. Paul") filed a

20  declaratory judgment action seeking a judgment that they had no duty to defend or indemnify

21  any of the state court defendants, and a determination of their rights relative to Admiral.  See

22  Compl., docket no. 1, at 8-9.  St. Paul's Complaint was followed by counter-claims on behalf

23  of both the state court defendants and Admiral, all of which also cross-claimed against one

24  another.  Answers, docket nos. 15, 22.  Admiral brought a third-party claim for contribution

25  against Safeco and AEIC, which responded with their own counter-claims for a contribution

26

1   claim-bar order.  Docket nos. 51, 56.  The parties later consented to Safeco's dismissal

2   because AEIC was the "real party in interest."  <u>See</u> Order, docket no. 115, at 2 n.1.

3   **D.    Admiral's Settlement during the Federal Litigation.**

4           During the course of this federal litigation, Admiral and the Association settled the

5   Association's claims for $2.2 million, in June 2006.  Only the third-party claims between

6   Admiral and AEIC are at issue in the motion for a reasonableness determination now before

7   the Court.

8   **II.    Findings of Fact**

9           1.      MVLLC was the developer of certain real property that became the Meadow

10  Valley Condominiums in Auburn, Washington.  MVLLC retained general contractor Hebert

11  Construction to build condominiums on the real property.

12          2.      Hebert Construction retained Interior Motives to install a number of hard

13  surfaces, including the tile and grout for the condominium unit entry ways and bath and

14  shower surrounds.  Interior Motives was not retained to apply any sealant to the grout except

15  for the club house men's bathroom.  Interior Motives did not install the tile backer board or

16  sub floor in the entry ways, and did not install the green board or the vapor barrier in the

17  bathrooms.

18          3.      MVLLC was sued by the Meadow Valley Homeowners Association in King

19  County Superior Court, Cause No. 03-2-33931-8 KNT (the "underlying state court action").

20  The Association asserted various causes of action based on alleged construction defects

21  throughout the condominium buildings.

22          4.      MVLLC filed a third-party complaint against the general contractor, Hebert

23  Construction, alleging that if the Association's claims of construction defect were proven at

24  trial, damages arising out of those defects were properly the responsibility of Hebert

25  Construction and its subcontractors.

26

5.    Hebert Construction brought a fourth-party complaint against its subcontractors, including Interior Motives.  Hebert Construction alleged that if the Association's claims of construction defect were proved at trial, damages arising out of those defects were the responsibility of the subcontractors, including Interior Motives.

6.    MVLLC tendered its defense to St. Paul.  St. Paul retained defense counsel for MVLLC.

7.    MVLLC and Hebert Construction also tendered their defense to Admiral.  Admiral accepted the tender subject to a reservation of rights for one of its annual policy periods, and denied a defense and indemnity on the remaining two annual policy periods.

8.    Interior Motives tendered the claim to AEIC for defense and indemnity, and AEIC agreed to defend Interior Motives subject to a reservation of rights.  AEIC retained defense counsel to represent Interior Motives.

9.    MVLLC also tendered its defense to AEIC on October 14, 2004.  AEIC denied the tender of defense on October 24, 2004.  AEIC explained that MVLLC was not listed as an insured on the 1999 to 2000 and 2000 to 2001 policies.  AEIC did note that MVLLC was an additional insured on the 2001 to 2002, 2002 to 2003, and 2003 to 2004 policies.  AEIC declined to provide a defense because it believed its policies provided only "excess" liability protection, and because St. Paul and Admiral were providing MVLLC a defense.

10.    MVLLC re-tendered its defense on January 7, 2005, arguing that there was no other insurer for MVLLC for the policy periods in which MVLLC was listed as an additional insured in the AEIC policy.  AEIC denied the re-tender of defense on January 20, 2005.

11.    Hebert Construction tendered its defense and indemnity to AEIC on December 30, 2004, and AEIC received the tender letter on January 3, 2005.  AEIC denied the tender of defense at a January 4, 2005 mediation attended by AEIC's representative, Tamara Dragseth.  As with MVLLC, AEIC's basis for denying a defense was that its insurance coverage was

"excess," and it did not owe a duty to provide a defense because St. Paul and Admiral were providing MVLLC and Hebert Construction with a defense.

12.    AEIC insured Interior Motives for annual policy periods including June 24, 1999 to June 24, 2000; June 24, 2000 to June 24, 2001; June 24, 2001 to June 24, 2002; June 24, 2002 to June 24, 2003; and June 24, 2003 to June 24, 2004.

13.    AEIC listed MVLLC and Hebert Construction as additional insureds for three of the five annual policy periods: June 24, 2001 to June 24, 2002; June 24, 2002 to June 24, 2003; and June 24, 2003 to June 24, 2004.

14.    The three AEIC policies in effect from June 24, 2001 through June 24, 2004 provide that MVLLC and Hebert Construction are additional insureds only "with respect to liability arising out of 'your work' for that insured by or for you." "You" and "your" referred to the named insured, Interior Motives. The "your work" exclusion is not triggered if the work was performed for Interior Motives by a subcontractor for Interior Motives.

15.    The three AEIC policies provide that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages."

16.    The three AEIC policies define "property damage" as follows:

   a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

17.    Admiral Insurance Company ("Admiral") insured MVLLC and Hebert Construction under at least three annual policies. Included in these policies was policy

1  number A00AG08147, which was issued to Hebert Construction and MVLLC and effective

2  from February 4, 2000 through February 4, 2001.

3    18.    Admiral Policy A00AG08147 had per occurrence limits of $1.0 million, with a

4  $2.0 million aggregate limit.  The Association asserted multiple occurrences in its litigation

5  against Admiral.  The policy provided that "[w]e will pay those sums that the insured

6  becomes legally obligated to pay as damages because of . . . 'property damage' to which this

7  insurance applies.  We will have the right and duty to defend the insured against any 'suit'

8  seeking those damages."

9    19.    MVLLC's defense counsel, Douglas Weigel, estimated the total settlement

10  value of MVLLC's exposure to the Association, including Interior Motives' work, was

11  approximately $4.0 million.  Weigel Decl., docket no. 230, ¶ 4.  Hebert Construction's

12  defense counsel, Steven Jager, estimated probable liability exposure between $3.7 and $4.25

13  million.  Jager Decl., docket no. 229, Ex. 3.  Mr. Jager estimated the attorneys' fees risk at

14  approximately $2.5 million.  Id. ¶ 6.

15    20.    St. Paul and Admiral provided a defense to MVLLC and Hebert Construction

16  in the underlying state court litigation at a cost of $800,000, with each insurer paying

17  $400,000 to provide the defense.  The Court has previously ruled that AEIC breached its

18  duty to provide MVLLC and Hebert Construction a defense.  See Minute Entry, docket no.

19  198 (granting Admiral's motion to limit scope of reasonableness hearing, docket no. 194);

20  see also Order, docket no. 115, at 12, 16-17.  AEIC has not contested the cost of defense for

21  MVLLC and Hebert Construction in the state court litigation.

22  **INVESTIGATION**

23    21.    During the course of the underlying state court litigation, the Association

24  retained expert Arthur Schroeder of Pacific Engineering Technologies to assess problems

25  with the building, including problems with the work in the bathrooms and the entry way.

26  Mr. Schroeder is a registered professional and structural engineer in the State of Washington.

22.     In a report dated August 9, 2004, Mr. Schroeder identified the following defects in the bathroom shower and tub surrounds:

      a.   The grout work was of an inconsistent depth and a potential pathway for water intrusion.

      b.   Some tiles were too close together, impeding the application of grout and creating a potential pathway for water intrusion.

      c.   The green board that was installed on the walls under the tile and grout was cut and mounted incorrectly such that water could penetrate and degrade the green board.

      d.   A vapor barrier (black plastic) was mounted on the interior stud wall face between the studs and the green board. The vapor barrier created a seal that prevented any water from evaporating if it entered the area between the tiles and the vapor barrier.

23.     Mr. Schroeder and his engineering firm investigated grout depths at nine locations. Mr. Schroeder testified that he and his staff observed shallow grout depths at all nine locations.

24.     Mr. Schroeder and his engineering firm intrusively investigated tub and shower surrounds at eleven locations, and observed mold growth and damage to the underlying gypsum board in ten out of eleven locations. Mr. Schroeder testified that the mold growth and damage to gypsum board constituted property damage.

25.     Mr. Schroeder concluded that the grout and tile installation violated the 1992 ANSI standards applicable to grout and tile installation. He also found the green board and vapor barrier installations violated the Uniform Building Code.

26.     Mr. Schroeder testified that in his opinion there was mold growth and damage to gypsum board in the vast majority of bathrooms at the Meadow Valley Condominiums. However, there was no testimony that Mr. Schroeder and his engineering firm performed a

ORDER - 8

1   visual inspection of grout depth, testing for mold growth, or any other testing or inspection in

2   any of the remaining bathrooms at the Meadow Valley Condominiums.

3        27.    Mr. Schroeder provided little information or analysis regarding the necessity or

4   effectiveness of applying grout sealant to porous grout surfaces in the tub and shower areas.

5        28.    Mr. Schroeder identified the following defects in unit entry ways:

6             a.    The backer board that was installed below the tile and grout was

7                   fastened to the sub floor with staples instead of screws.  This allowed

8                   the backer board to move away from the sub floor over time.

9             b.    The sub floor was sporadically fastened to the floor joists.  This allowed

10                   the sub floor to move and flex.

11             c.    The conditions found in the backer board and sub floor caused the tile

12                   and grout system to crack in various places.

13        29.    Mr. Schroeder and his engineering firm found that entry tile defects resulted

14   from inadequately attached tile backer board and improperly installed sub floor (i.e.,

15   improperly installed floor sheathing below the backer board).

16        30.    Mr. Schroeder testified that the improperly attached sub floor would likely

17   have been installed by the framing crew, and that improperly attached tile backer board

18   would likely have been installed by the tile installation crew.

19        31.    Mr. Schroeder and his engineering staff tracked the inspection of tile at the

20   Meadow Valley Condominiums.  The engineers observed "cracked" grout in twelve units,

21   and chips, removal, and squeaks in three additional units.  The engineers recorded a "?"

22   observation for fifty units, meaning they entered the unit but were unsure whether they

23   observed the tile condition.

24        32.    Mr. Schroeder prepared a scope of repair for all units, and communicated his

25   findings to Charter Construction for the preparation of a repair estimate.  The repair estimate

26   included all units, including both those units inspected and those units not inspected.

ORDER - 9

1    33.    Charter Construction prepared an estimated cost of repair for all units at the

2    Meadow Valley Condominiums based on Mr. Schroeder's scope of repair.  The total cost of

3    repair including overhead and markup was $4,354,996.

4    34.    Charter Construction estimated that, including overhead and markup, the total

5    cost to repair 158 bathrooms was $632,195.  The total estimated cost, including overhead

6    and markup, to repair the entry ways in 78 units was $250,116.  The total cost of repair for

7    all entry ways and bathrooms, in Charter Construction's estimate, was $882,311.[1]

8    35.    Charter Construction's repair estimates were based on Mr. Schroeder's expert

9    opinion that all bathrooms and entry ways were defective and had property damage.

10    36.    Mr. Schroeder communicated his findings and opinions, as well as the repair

11    estimate from Charter Construction, to the Association in a report dated August 9, 2004.  The

12    report was provided to the Association well in advance of settlement negotiations with AEIC

13    and the other insurers in 2005, and its eventual settlement with AEIC in July 2005.[2]

14    **NEGOTIATION - STATE COURT PROCEEDINGS**

15    37.    AEIC attended a mediation on January 4, 2005, and was represented by

16    Tamara Dragseth.  Ms. Dragseth testified to a settlement demand of $225,000 from Hebert

17    Construction, conveyed through its counsel, Mr. Jager.  Ms. Dragseth countered with a

18    settlement offer of $35,000 on behalf of AEIC.

19

20    [1] Based on Charter Construction's estimate, the total cost to repair the actual property
damage located, verified, and observed by Mr. Schroeder and his staff in the 10 bathrooms
21    would have been approximately $40,012.  The cost to repair actual property damage located,
verified, and observed by Mr. Schroeder and his staff in the 15 units where cracked grout and
22    other problems were observed would have been approximately $48,099.

23    [2] AEIC urges the Court to strike much of Mr. Schroeder's testimony because it was
contained only in the August 9, 2004 report, which was ostensibly not disclosed during
24    discovery.  See Objections, docket no. 231, at 4.  However, the information in Mr. Schroeder's
report was available to the Association before it determined to settle with AEIC, and would have
25    been relevant to the Association's consideration of settlement in light of Interior Motives' work
at the Meadow Valley Condominiums.  Accordingly, the Court considers the information
26    because it is some evidence as to whether the settlement was reasonable.

ORDER - 10

38.     Interior Motives filed a motion for summary judgment seeking dismissal based on the statute of limitations.  The motion was granted on January 28, 2005 and the order was never appealed.

39.     In February 2005, Judge White granted a motion for partial summary judgment by the Association in the underlying state court action.  Judge White noted, *inter alia*, that MVLLC breached the implied warranties of quality "by the installation of grout joints that extended only 1/16" to 1/32" into the joints in contradiction to the requirements of the Tile Council of North America's ('TCA') 1999 Handbook for Ceramic Tile Installation."

40.     AEIC attended an April 5, 2005 mediation in the state court proceedings, sending Ms. Dragseth to represent its interests.  The Association demanded in excess of $8.5 million.  AEIC did not negotiate directly with the Association, MVLLC, or Hebert Construction.  Ms. Dragseth offered $100,000 to fund a settlement through mediator Chris Soelling.

41.     AEIC learned that at the conclusion of the April 5, 2005 mediation, MVLLC, Hebert Construction, and the Association had entered into a proposed settlement agreement by which the Association would take an assignment of all claims MVLLC and Hebert Construction had against their insurers, including AEIC.  MVLLC and Hebert Construction consented to a $7.2 million judgment against their companies and in favor of the Association, with a covenant not to execute.  At that point, the Association assumed control over any insurance claims MVLLC and Hebert Construction had against AEIC.

42.     The Association noted the consent judgment for consideration by the state court, and requested that the court find the judgment amount to be reasonable.  The hearing date on the motion was June 27, 2005.

**SETTLEMENT – AEIC, ASSOCIATION, MVLLC, HEBERT CONSTRUCTION**

43.     AEIC contacted mediator Chris Soelling and expressed interest in settling all claims with the Association as assignee of claims by MVLLC and Hebert Construction.  Mr.

1   Soelling, as mediator, contacted the Association.  Upon receiving word that AEIC was

2   interested in settling, the Association issued a demand in the amount of $150,000.

3   Negotiations proceeded through the mediator and all claims against AEIC and Valley

4   Insurance Company were settled for $115,000.  AEIC contributed $86,250 to the settlement

5   fund, and Valley Insurance Company contributed the remainder.  The settlement was agreed

6   to on June 26, 2005, the day before the scheduled reasonableness hearing in state court

7   relative to the settlement.  The signed agreement is dated July 22, 2005.  Knowles Decl.,

8   docket no. 60, Ex. C (Settlement Agreement).

9          44.    Valley Insurance Company was another insurer of Interior Motives.

10         45.    Pursuant to the terms of the settlement agreement AEIC, Valley Insurance

11  Company, and the Association, as assignee of all rights of MVLLC and Hebert Construction,

12  agreed that:

13                a.     the purpose of the agreement was to resolve all claims arising out of

14                       or related to insurance coverage for the Meadow Valley project; and

15                b.     the intent was to absolve American Economy and Valley Insurance

16                       Company from all liability arising out of work at the project, including

17                       insurance coverage related thereto.

18         46.    The Association, as assignee, released all claims against AEIC and agreed that

19  the settlement was reasonable, full, and fair, and completely satisfied all claims against

20  Interior Motives, AEIC, and Valley.

21         47.    When American Economy settled, it considered its $86,250 ($115,000 total if

22  Valley Insurance Company's contribution is included) settlement reasonable because:

23                a.     its exposure was believed to be anywhere from $0 to $800,000;

24                b.     it was required to pay only for property damage that occurred during its

25                       policy period;

26

ORDER - 12

1          c.      there was no evidence Interior Motives work was in any way related to

2                    the entry way failures;

3          d.      there were multiple causes of water intrusion in the bathrooms,

4                    including the placement and cutting of the green board;

5          e.      there were multiple causes of property damage related to the bathrooms

6                    including the placement and cutting of the green board, the installation

7                    of an impermeable vapor barrier, and Hebert Construction's failure to

8                    seal the grout before using the showers and bath surrounds;

9          f.       the Association's opening demand to American Economy and Valley

10                 Insurance Company was $150,000; and

11          g.      it was choosing to contain its risk and avoid litigation with its insureds'

12                 assignee.

13      48.     There is no evidence that the Association and AEIC engaged in fraudulent or

14 collusive conduct, or that the settlement was the result of anything other than a mediated

15 negotiation to resolve claims against Interior Motives' insurers.

16      49.     At the time of the Association's settlement with AEIC, Interior Motives had

17 been dismissed from the underlying case and the King County Superior Court had not heard

18 argument on the motion for a reasonableness determination.

19 **REASONABLENESS**

20      50.     Under Washington law, the reasonableness of a settlement is determined based

21 on the factors announced in <u>Glover v. Tacoma Gen. Hosp.</u>, 658 P.2d 1230, 1236 (Wash.

22 1983).  The Court weighs the various factors as follows:

23          a.       **Releasing Parties' Damages.**

24               i.      AEIC could have been obligated to pay damages attributable to

25                    Interior Motives' work, which included property damage

26

1    resulting from incorrectly installed tile and grout in bathrooms

2    and entry ways.

3    ii.    Property damage was also attributable to a contractor other than

4    Interior Motives, who incorrectly installed green board and a

5    vapor barrier, and incorrectly installed entry way sub floors.

6    iii.    AEIC believed its exposure was anywhere from $0 to $800,000.

7    b.    **Merits of Releasing Party's Liability Theory.**

8    i.    The Association would likely have recovered some amount of

9    damages resulting from Interior Motives' work at the Meadow

10    Valley project.  There was evidence that Interior Motives' work,

11    including defective tile and grout, caused property damage.

12    ii.    The Association's ability to recover damages could have been

13    limited because substantial damage causing work, including sub

14    floor, green board, and vapor barrier, was performed by

15    contractors unrelated to Interior Motives.

16    c.    **Merits of Released Party's Defense Theory.**

17    i.    AEIC was obligated to pay for property damage occurring

18    between June 24, 2001 and June 24, 2004, the applicable annual

19    policy periods.  In addition, AEIC's indemnity obligation was

20    limited to liability arising out of Interior Motives' work.

21    ii.    There is no evidence that Interior Motives installed entry way

22    sub floors and/or tile backer board.

23    d.    **Released Party's Relative Fault.**

24    i.    Interior Motives' work in the bathrooms was not the sole cause

25    of property damage.  There were multiple causes of water

26    intrusion in the bathrooms, and multiple causes of property

ORDER - 14

damage, including placement and cutting of the green board, installation of the impermeable vapor barrier, and failure to seal the grout.

    ii.    Construction issues unrelated to Interior Motives' work contributed to and caused property damage in the entry ways.

**e.**    **Risks and Expenses of Continued Litigation.**

    i.    Both parties faced risks and expenses of continued litigation.

    ii.    The Association faced delay in repairs and resolution of its case.

    iii.    The Association's opening demand to AEIC and Valley Insurance Company was $150,000.

**f.**    **Released Party's Ability to Pay.**

    i.    AEIC's policies had $1.0 million limits and AEIC had the ability to pay any judgment against it.

**g.**    **Bad Faith, Collusion, or Fraud.**

    i.    There is no evidence of bad faith, collusion, or fraud.

    ii.    AEIC's primary purpose in settling with the Association was to resolve all coverage obligations it owed to MVLLC and Hebert Construction.

**h.**    **Extent of the Releasing Parties' Investigation and Preparation for Trial.**

    i.    The Association extensively investigated their case and claim.

    ii.    The Association retained experts and those experts issued various reports. In particular, the Association relied upon the expert advice of Mr. Schroeder of Pacific Engineering Technologies, as well as the construction estimates prepared by Charter Construction.

ORDER - 15

1         iii. The August 9, 2004 report by Mr. Schroeder was drafted for the

2            Association and its counsel.  The Association received the report

3            in advance of settlement negotiations with AEIC and Valley

4            Insurance Company.

5         iv. The Association was represented by competent counsel who fully

6            evaluated the claims against AEIC and Valley Insurance

7            Company prior to settlement.

8       i. **Interests of Parties Not Released.**

9         i. Admiral's insurance policy obligated it to pay for property

10           damage that occurred during its policy period of February 4,

11           2000 to February 4, 2001.  AEIC's policies obligated it to pay for

12           property damage that occurred during its policy periods of June

13           24, 2001 and June 24, 2004.

14   **ADMIRAL'S SETTLEMENT**

15      51. Admiral and the Association settled the Association's claims in June 2006 for

16   $2.2 million.  Admiral would not agree to the Association's request to allocate the settlement

17   funds between damages, attorney fees, post-judgment interest, bad faith, and CPA claims.

18   Admiral proposed an allocation that excluded bad faith and CPA claims, which was

19   unacceptable to the Meadow Valley Defendants.  The Meadow Valley Defendants believed a

20   "significant portion" of their total damages related to bad faith.  Ultimately, the settlement

21   was not allocated.

22   ## III.   Conclusions of Law

23      1. An insurance provider has independent standing to assert a claim for equitable

24   contribution against a co-insurer, when it has undertaken the defense or indemnification of a

25   common insured.  <u>See</u>, <u>e.g.</u>, <u>Hartford Casualty Ins. Co. v. Mt. Hawley Ins. Co.</u>, 123 Cal.

26   App. 4th 278, 287 (2004).

1
2
3
> Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally and concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk.

4   Id. (emphasis in original).

5          2.      This Court has the inherent equitable power to enter an order precluding

6   subsequent claims for contribution and indemnity by other non-settling parties in the

7   litigation.  See Order, docket no. 115, at 21 (citing Zidell Marine Corp. v. Beneficial Fire and

8   Casualty Ins. Co., Case No. 03-5131, docket no. 254 (W.D. Wash. May 24, 2004); Cadet

9   Mfg. Co. v. Am. Ins. Co., Case No. 04-5411, docket no. 245 (W.D. Wash. March 30, 2006));

10  see also Puget Sound Energy v. Certain Underwriters at Lloyd's, London, 138 P.3d 1068,

11  1079 (2006).

12         3.      The Court evaluates the reasonableness of the settlement by considering the

13  Glover factors together.  None of the Glover factors are controlling, and all factors need not

14  be present in order for the Court to find the settlement was reasonable.

15         4.      Considering all of the Glover factors together in this case, the Court finds that

16  AEIC's settlement with the Association for $86,250, together with Valley Insurance

17  Company's contribution for a total of $115,000, was reasonable under all the circumstances.

18         5.      AEIC is entitled to an order barring Admiral's equitable contribution claims for

19  reimbursement of supplementary payments, indemnity damages, and pre-judgment interest.

20  Pursuant to the Court's prior ruling, AEIC is not entitled to an order barring Admiral's

21  equitable contribution claims for reimbursement of defense costs because AEIC breached its

22  duty to defend MVLLC and Hebert Construction.

23         6.      The entry of an order barring Admiral's equitable contribution claims in this

24  case is consistent with public policy in Washington to encourage settlement.

25         7.      The Court rejects Admiral's assertion that Safeco Ins. Co. of America v.

26  Century Surety Co., 140 Cal. App. 4th 874 (2006) is controlling.  The Safeco decision

1   considered an action by a settling insurer against a "nonparticipating insurer," which is

2   markedly different from the case before this Court.  Although AEIC breached its duty to

3   defend, it settled all claims against it in a mediated settlement.  Admiral's position that

4   AEIC, as a settling insurer, is liable for both costs of defense and settlement, is wholly

5   without merit and is contrary to Washington case law recognizing the preclusive effect of a

6   claims bar order and Washington's public policy favoring settlement.  See Puget Sound

7   Energy, 138 P.3d at 1078-79.  Washington's public policy favoring settlement is applicable

8   here because Admiral is seeking contribution from a settling insurer that negotiated in good

9   faith to resolve its obligations to its insureds.  Admiral's claim against AEIC is limited to its

10  equitable claim for the cost of defense paid by Admiral.

11      8.      Admiral and St. Paul provided MVLLC and Hebert Construction with a

12  defense in the underlying action.  Total defense costs totaled $800,000.  Admiral paid

13  $400,000 of the defense costs.

14      9.      In allocating defense costs, Admiral urges a proportional division based on a

15  limited subset of policies.  Admiral urges the Court to allocate 3/5ths of the defense costs to

16  AEIC.  The Court rejects this approach because it ignores the risk covered by each policy

17  and inexplicably omits other policies from consideration.  AEIC's allocation of defense costs

18  urges consideration of a total of 37 policies allegedly triggered by property damage at the

19  Meadow Valley Condominiums.  AEIC urges the Court to allocate its share based on three

20  policies, leaving AEIC with a 3/37ths share of defense costs.  This approach is rejected

21  because no evidence has been admitted concerning the identity, substance, or applicability of

22  the 37 insurance policies.

23      10.      The right to contribution is based not on the insurance contracts issued to the

24  policy holder, but from "equitable principles designed to accomplish ultimate justice in the

25  bearing of a specific burden."  Centennial Ins. Co. v. United States Fire Ins. Co., 105 Cal.

26  Rptr. 2d 559, 563 (2001).  An appropriate allocation is one where each insurer "pays its fair

1   share and one does not profit at the expense of the others." <u>Fireman's Fund Ins. Co. v.</u>

2   <u>Maryland Cas. Co.</u>, 77 Cal. Rptr. 2d 296, 301 (1998).  The Court may consider the

3   "exclusions and limits of the respective insurance policies in effect." <u>Id.</u> at 304.  AEIC's

4   policies provided MVLLC and Hebert Construction with additional insured coverage for

5   liability arising out of Interior Motives' work.

6        11.    A fair and equitable allocation of defense costs in this case divides the cost of

7   defense equally between Admiral, AEIC, and St. Paul.  Under this allocation, AEIC's

8   equitable contribution would have been 1/3rd of the defense cost of $800,000.  AEIC should

9   have paid $266,666 in defense costs.  Admiral's defense expenses were $400,000, and were

10  $133,334 more than its fair share of $266,666.  Admiral is entitled to $133,334 from AEIC to

11  put Admiral back in the position it would have been in had AEIC defended.

12       12.    AEIC is directed to serve and file a proposed judgment consistent with these

13  Findings of Fact and Conclusions of Law by March 23, 2007.  The parties shall meet and

14  confer regarding the form of the proposed judgment prior to its filing.  Admiral may file any

15  objections to the proposed judgment by March 30, 2007, and AEIC may file a Reply in

16  support of its proposed judgment by April 4, 2007.  The Court will thereafter enter a

17  Judgment.

18

19       IT IS SO ORDERED.

20       DATED this 15th day of March, 2007.

21

22

23       Thomas S. Zilly
         United States District Judge

24

25

26

ORDER - 19